FOURTH DIVISION

December 4, 2003

No. 1-02-2826

AMERICAN COUNTRY INSURANCE COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) 

) No. 01 CH 61

JAMES McHUGH CONSTRUCTION COMPANY, ) 

JAMES McHUGH DEVELOPMENT COMPANY, ) 

and MICHAEL MARCIANO, ) Honorable

) Richard J. Billik, Jr.,

Defendants-Appellants. ) Judge Presiding.

JUSTICE GREIMAN deilvered the opinion of the court:

Defendants James McHugh Construction Co. and James McHugh Development Co. (collectively, McHugh) sought insurance coverage with plaintiff American Country Insurance Co. (American) for a bodily injury claim and lawsuit filed by Michael Marciano against McHugh for its alleged negligence.  McHugh was the general contractor on a construction project and Spectrum Stone (Spectrum) was a subcontractor and Marciano's employer.  Marciano was injured as a result of his employment.  As a condition of the contract between McHugh and Spectrum, McHugh was added as an additional party insured, subject to certain conditions, on the American liability policy issued to Spectrum. American denied coverage for McHugh with reference to the Marciano claim.

American filed a complaint for declaratory relief and judgment against McHugh, asserting that it had no duty to defend or indemnify McHugh in the Marciano lawsuit.  McHugh answered the complaint and filed its own request for declaratory relief.  The parties then filed cross-motions for summary judgment, and McHugh filed its first "motion for turnover."  That motion sought compensation for the period of time that McHugh alleges American "acknowledged the claim and agreed to ‛handle this claim' and lawsuit,' " before American filed its complaint for declaratory relief.  The trial court "entered and continued" McHugh's request for payment of defense expenses as listed in the court's "motion for turnover order."

Eventually, the trial court granted American's motion for summary judgment and denied McHugh's motion for summary judgment.  However, the court did not rule on McHugh's "motion for turnover."  Thereafter, McHugh filed a "second motion for turnover," which again sought payment of defense expenses for the period of time after which American allegedly acknowledged the underlying claim and lawsuit.  The trial court denied the second motion for payment of defense expenses, and defendants appealed.

After McHugh's appeal was docketed in this court, but before it filed its brief, American moved to dismiss the appeal.  It argued that McHugh's postjudgment trial proceedings –namely, the second motion for turnover– did not qualify as a postjudgment motion under section 2-1203 Code of Civil Procedure (the Code) (735 ILCS 5/2-1203 (West 2000)) and, therefore, could not toll the 30-day time limit found in Supreme Court Rule 303(a)(1) for filing a timely appeal.  See 155 Ill. 2d R. 303(a)(1).   Plaintiff asserted that because McHugh's notice of appeal was untimely it could not confer jurisdiction upon this court.  McHugh answered the plaintiff's motion, and plaintiff replied.  Upon review, a motion panel of this court ordered that plaintiff's dismissal motion be taken with the case.  For the reasons that follow, we deny plaintiff's motion for dismissal and affirm the trial court's decision.

By way of background, we note that McHugh's responsibility as a general contractor is to control the project schedule and insure that the structure complies with the project specifications.  However, McHugh is not involved in the work performed by employees of subcontractors, as the subcontractors are ultimately responsible for the "means and methods" of their employees' work as well their safety.  

We are also aware that the Illinois Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) bars injured workers from suing their own employers.  Consequently, because injured construction workers cannot sue their subcontractor employers, it is common practice for them to sue the general contractor involved with the project.  In realization of that possibility, general contractors will usually set up insurance requirements for their subcontractors, with the intent of passing the liability for worker injuries along to the worker's employer's insurance carrier.  

In the present case, for example, McHugh claims that, as part of its contract, it required its subcontractors to provide it with insurance coverage for claims against it that arise out of the subcontractor's work.  In particular, the McHugh-Spectrum subcontract provided:

"Each of the aforesaid policies shall name [McHugh] and such other parties designated on Schedule B as additional insured parties and provide that it is primary to any general liability insurance maintained by Contractor or any other additional insured party***.

* * *

Subcontractor shall cause James McHugh Construction Co. *** to be included as Additional Insureds under Subcontractor's General Liability policy and Umbrella policy, if any, Coverage shall be primary for the benefit of the Additional Insureds."

To that end, American issued a certificate of insurance adding McHugh as an additional insured under the policy.  That certificate provided in pertinent part:

"This is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated.  Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions, and conditions of such policies.  Limits shown may have been reduced by paid claims."

The policy also contains an endorsement form 2030M, which in relevant part provides:

"The insurance provided to additional insureds is limited as follows:

(1) The person or organization is an additional insured but only with respect to your acts or omissions in connection with ‛your work' for that additional insured by you or on your behalf at the location designated in the agreement and designated in a Certificate of Insurance issued by our authorized producer.

(2) Additional exclusions.  This insurance does not apply to:

* * *

(c) ‛Bodily Injury' or ‛property damage' arising out of any act or omission of the additional insured(s) or any of their employees."

The defendants in the present case assert that it is this policy endorsement that gives plaintiff the duty to defend or indemnify the underlying defendants named in that action.

In the underlying action, Marciano's complaint asserts that McHugh constructed or erected a scaffolding from which Marciano fell, and that McHugh failed to: (1) inspect, manage and supervise the jobsite; (2) warn Marciano of dangerous conditions; or (3) provide adequate safeguards to prevent Marciano's injury.  Each one of these allegations, Marciano claimed, proximately caused his injuries.  However, Marciano's employer, Spectrum, was not a named defendant and was never joined as a third-party defendant.  Accordingly, no acts or omissions on the part of Spectrum were alleged to have caused Marciano's injuries.

After McHugh was served with a summons in the Marciano lawsuit, it tendered the defense to American as an additional insured under Spectrum's policy.  On November 6, 2000, American responded in writing to McHugh's tender and accepted the tender under a full reservation of rights.  However, the letter also noted that the policy issued to Spectrum contained endorsement AC 2038M, which states in pertinent part:

"The following is added to paragraph 2c of ‛Duties In The Event of Occurrence, Claim or Suit' of the ‛SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS':

* * *

(6) Promptly tender the defense of any claim made or ‛Suit' to any other Insurer which also has available insurance for a loss which we cover under Coverage A or B of this coverage part."

Based on that endorsement, American requested that McHugh tender the defense of the Marciano lawsuit to its own insurer and provide American a copy of the policy.  American allegedly advised McHugh that McHugh's compliance with its request was a condition precedent to coverage and that American would take no further action until McHugh complied.

On November 10, 2000, McHugh sent a letter to American that stated: "McHugh refuses to tender this matter to any insurer other than American Country."  McHugh stated that in light of two Illinois decisions, 
John Burns Construction Co. v. Indiana Insurance Co.
, 189 Ill. 2d 570 (2000), and 
Institute of London Underwriters v. Hartford Fire Insurance Co.
, 234 Ill. App. 3d 70 (1992), and the absence of mention of the tender requirement in the certificate of insurance issued to McHugh, American could not put its financial interest ahead of McHugh to require a tender.

After receiving McHugh's November 10, 2000, letter, American commenced this declaratory judgment action.  The complaint sought a judicial determination that American had no duty to defend McHugh in the Marciano action because: (1) endorsement form 2030M excluded coverage for McHugh's own negligent acts or omissions, and (2) McHugh repudiated its "tender-to-others" obligation under endorsement form AC 2038M.  McHugh answered the complaint and counterclaimed, arguing that (1) American still owed McHugh a defense in the Marciano lawsuit, and (2) the "tender-to-others" provision of form AC 2038M was invalid.  

Thereafter, the parties filed cross-motions for summary judgment, and McHugh filed a written motion entitled "motion for a turnover order."  The impetus behind that motion was that American was obligated to pay McHugh's defense cost in the Marciano action from the time that American allegedly accepted McHugh's tender until the time American filed its declaratory judgment action.  The trial court ordered the motion "entered and continued."

On June 17, 2002, the trial court heard arguments on the cross-motions for summary judgment and ruled in favor of American.  The court's order stated:

"(1) Motion of McHugh Defendants denied.

(2) Motion of plaintiff is granted.

(3) Court adjudges and declares that Plaintiff has no duty to pay, defend, or indemnify McHugh Defendants for the alleged injurious occurrence of the Marciano complaint in [case number] 00 L 008245.

(4) Court declines to enter summary judgment for either party with respect to the ‛duty to tender' provisions of the policy."

Ten days later, McHugh filed its "second motion for turnover order," which was a slightly modified version of its previous "motion for turnover order" that had been "entered and continued."

 On August 20, 2002, upon review of American's response to McHugh's second turnover motion, the trial court denied it.  In making its ruling, the trial court disagreed with American's argument that the passage of time from June 17, 2002, to August 20, 2002, had divested the court of jurisdiction to rule on the motion.  On September 12, 2002, McHugh filed its notice of appeal.  

 We first address the motion taken with this case, which focuses on the same jurisdictional issue posed to the trial court:  whether McHugh's "second motion for turnover order" qualifies as a postjudgment motion under Code section 2-1203, thereby tolling the 30-day time limit found in Supreme Court Rule 303(a)(1) for filing a timely appeal.  See 155 Ill. 2d R. 303(a)(1).  For if it does not, defendants' notice of appeal is late and we have no jurisdiction to hear this appeal.

As this court has noted:

"Under Supreme Court Rule 303(a)(1), a notice of appeal must be filed within 30 days after the entry of the final judgment from which the appeal is taken, or, if a timely post-trial motion directed at the judgment is filed, within 30 days after entry of the order disposing of the last pending post-trial motion.  134 Ill. 2d R. 303(a)(1).  Under section 2-1203 of the Illinois Code of Civil Procedure, a post-trial motion must be filed within 30 days of a final judgment.  735 ILCS 5/2-1203 (West 1994).  Otherwise, the trial court will lose jurisdiction to modify or vacate the final order which it entered after the lapse of 30 days."  
Lajato v. AT&T, Inc.
, 283 Ill. App. 3d 126, 131 (1996).   

Moreover, Code section 2-1203 provides that in a nonjury case, within 30 days after the entry of judgment, a party may file a motion for a rehearing, a retrial, a modification of the judgment, a vacatur of the judgment, or other relief.  735 ILCS 5/2-1203 (West 2000).  However, to be valid and to extend the time for appeal, such a motion must be directed against the judgment and must contain specific grounds warranting relief such as reconsideration or vacatur.  See 
Robertson v. Winnebago County Forest Preserve District
, 301 Ill. App. 3d 520, 522-26 (1998).

In the present case, American notes that McHugh's counterclaim for declaratory relief alleged that it was not required to tender the defense of the Marciano lawsuit to its own insurer.  Further, American argues, the prayer for relief in McHugh's counterclaim "merely asks the [c]ourt to declare, construe, and adjudicate that the American Country policy affords full coverage to the McHugh [d]efendants for their claim; that American Country has a full duty to defend the McHugh [d]efendants with respect to the Marciano [l]awsuit; and that American Country has a full duty to indemnify the McHugh [d]efendants with respect to the Marciano claim."  However, American notes, McHugh's counterclaim did not seek payment of its defense costs from the date it tendered the Marciano lawsuit to American until the date the judgment in that action was entered.

In addition, American asserts that the trial court's June 17, 2002, order granting summary judgment for American on its claim, and denying summary judgment for McHugh on its counterclaim, was a final judgment because it disposed of the rights of the parties.  
Steinbrecher v. Steinbrecher
, 197 Ill. 2d 514, 524 (2001).  A "final judgment ‛decides the controversies between the parties on the merits and fixes their rights, so that, if the judgment is affirmed, nothing remains for the trial court to do but proceed with its execution.'  
In re J.N.
, 91 Ill. 2d 122, 127 (1982)."  
Steinbrecher
, 197 Ill. 2d at 524.  In other words, American asserts, where the trial court ruled on all of the issues listed in plaintiff's claim and defendants' counterclaim, its June 17, 2002, order was final and appealable as to those issues.

However, it was not until that final judgment was entered that McHugh filed its second turnover motion which, American asserts, proceeded under the purportedly new theory that McHugh was entitled to defense costs from the date of tender of the Marciano lawsuit to American until the date that judgment was entered.  McHugh's reasoning in that motion was clear: the reservation of rights letter issued by American created rights for McHugh to receive interim costs for the Marciano lawsuit during the pendency of the coverage case.  Nevertheless, American notes, no such claim was contained or asserted in McHugh's counterclaim.  

Accordingly, American argues that the second turnover motion was "nothing more than an attempt to amend the [c]ounterclaim to assert this theory," and did not seek a rehearing, retrial, vacation, or modification of the court's judgment, as provided by Code section 2-1203.  See, 
e.g.
, 
Vanderplow v. Krych
, 332 Ill. App. 3d 51, 53 (2002) ("To qualify as a postjudgment motion, the motion must request at least one of the forms of relief specified in section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 1998)), it must specify the grounds that would warrant granting the relief requested, and it must be filed with the clerk.  [Citation.]").  American also asserts that the second turnover motion did not seek the "other relief" which the supreme court has held must be "similar in nature" to the other forms of relief enumerated in Code section 2-1203.  See 
Fultz v. Haugan
, 49 Ill. 2d 131, 135-36 (1971).  As a result, American claims that McHugh's second turnover motion cannot operate to extend the 30-day limitations period of Rule 303(a)(1) and that its notice of appeal was untimely in that it was filed more than 86 days after June 17, 2002 – the entry of final judgment.  Thus, American concludes, we do not possess the jurisdiction to hear McHugh's appeal.

After reviewing McHugh's counterclaim, we agree with the plaintiff that McHugh never specifically delineated the time frame for which it was requesting payment of its defense costs.  Instead, paragraphs 11 and 13 of the counterclaim state:

"11.  That upon service in the underlying action, McHugh tendered its defense to [American] requesting a full defense and indemnification pursuant to the 
Institute of London Underwriters v. Hartford Fire Ins[urance] Co.
 decision allowing McHugh to choose one insurer and knowingly forgo another insurer's participation in the defense of a claim. ***

13.  That [American] has a duty to fully defense and indemnify McHugh in the Marciano [action] as an additional insured under the [American] policy."

In the words of plaintiff, McHugh simply sought a declaration that American's policy afforded full coverage to it and that American had a full duty to defend and indemnify it with respect to the Marciano lawsuit.

That stated, however, we are not persuaded by plaintiff's attempt to severalize McHugh's later, more specific request in its second motion for turnover for the interim costs of the Marciano lawsuit from McHugh's broader prayer for relief.  Instead, we find that McHugh's counterclaim put the issue of payment of all past, present, and future fees and costs of the Marciano lawsuit before the trial court and that the trial court gave a final order as to that issue: "[The] Court adjudges and declares that Plaintiff has no duty to pay, defend, or indemnify McHugh Defendants for the alleged injurious occurrence of the Marciano complaint in [case number] 00 L 008245."  McHugh's second motion for turnover simply sought a modification of that judgment.  It is apparent that McHugh filed that second motion for turnover because it believed the particular issue of its claim for the "interim" defense fees and costs had not been adjudicated and, therefore, that the trial court's June 17, 2002, order was not final.  As noted, however, we agree with the trial court's assessment that it entered a final order on June 17, 2002, on all of the motions before it, and that it simply found that plaintiff had no duty to pay, defend or indemnify the defendants whatsoever in connection with the Marciano case.  Accordingly, we, like the trial court, construe defendants' "second motion for turnover" as a motion seeking modification of that final judgment; namely, that the court should alter its previous finding and award the "interim" costs of defending the Marciano lawsuit to the defendants. 

In light of that determination and the fact that defendants' "second motion for turnover" contains specific grounds that would warrant the modification of the trial court's judgment, we conclude that defendants' "second motion for turnover" was, in effect, a proper Code section 2-1203 motion.  And because the defendants filed their notice of appeal 16 business days after the trial court ruled upon that motion, we find their appeal to be timely.  See 155 Ill. 2d R. 303(a)(1).  Plaintiff's motion to dismiss is denied.

In their opening brief on appeal, defendants initially argued that the trial court's grant of summary judgment in favor of the plaintiff was in error and that summary judgment should have been granted to the defendants.  Defendants argued in the alternative that: (1) plaintiff had a duty to pay the costs of the defense from the day plaintiff accepted the duty to defend to the day the trial court granted summary judgment for the plaintiff; or (2) at the very least, the plaintiff had a duty to pay the costs of the defense from the day plaintiff accepted the duty to defend to the day plaintiff filed this declaratory action.  Plaintiff replied that no statute requires such payments and no court has ever held that insurers have such a liability.  In their reply brief, the defendants appear to concede the point and only raise the argument that the trial court should have granted summary judgment to the defendants rather than to the plaintiff.

As this court noted in 
Abrams v. State Farm Fire & Casualty Co.
, 306 Ill. App. 3d 545, 548 (1999), our review of a trial court's grant or denial of a motion for summary judgment is 
de novo
:

"Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits, when taken together and in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 1996); 
Majca v. Beekil
, 183 Ill. 2d 407, 416, 701 N.E.2d 1084 (1998).  We review the trial court's granting of a summary judgment 
de novo
.  
In re Estate of Rennick
, 181 Ill. 2d 395, 401, 692 N.E.2d 1150 (1998)."

"Where no factual issues are raised on appeal, the sole question on review is whether the trial court's entry of summary judgment is proper as a matter of law."  
Spiegel v. Zurich Insurance Co.
, 293 Ill. App. 3d 129, 132 (1997).  As a result, we are to conduct an independent review of this issue.  
Abrams
 also commented generally upon an insurer's duty to defend:

"An insurer's duty to defend, which is much broader than its duty to indemnify, is generally determined by comparing the allegations of the underlying complaint against the insured to the language of the insurance policy.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992).  If the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the insurer is obligated to defend its insured.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997);   
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 393, 620 N.E.2d 1073 (1993).  This is true even if the allegations are groundless, false, or fraudulent.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991).  In determining the insurer's duty to defend, ‛[t]he allegations in the underlying complaint must be liberally construed in favor of the insured.'  
Outboard Marine
, 154 Ill. 2d at 125.   Additionally, if a provision of the insurance policy can reasonably be said to be ambiguous, that provision will be construed in favor of the insured.  
United States
 
Fire Insurance Co. v. Schnackenberg
, 88 Ill. 2d 1, 4, 429 N.E.2d 1203 (1981).  We will not, however, distort the language of a policy to create an ambiguity where one does not exist.  
Smith v. Neumann
, 289 Ill. App. 3d 1056, 1064, 682 N.E.2d 1245 (1997)."  
Abrams
, 306 Ill. App. 3d at 549.

In other words, these rules of construction do not justify construing a contract against an insurer where no real ambiguity exists.  
Cobbins v. General Accident Fire & Life Assurance Corp.
, 53 Ill.  2d 285, 294 (1972).

McHugh's argument on appeal is that the trial court erred in granting American's motion for summary judgment and finding that it had no duty to defend McHugh in the underlying action. McHugh first asserts that the policy does not exclude the tort allegations raised in the underlying complaint from American's coverage of the additional insureds.  Specifically, McHugh points to a portion of endorsement form 2030M, which provides:

"The person or organization [McHugh] is an additional insured but only with respect to your [Spectrum's] acts or omissions in connection with ‛your work' for that additional insured by you or on your behalf at the location designated in the agreement and designated in a Certificate of Insurance issued by our authorized producer."

Under provision (2)(c) of endorsement form 2030M, McHugh notes, it is entitled to a defense of the lawsuit so long as it is possible that the injuries incurred by Marciano arose out of Spectrum's work on the project.  

As to provision (2)(c), because the term "arising out of" does not necessarily require that Spectrum be the sole cause of the injury or damage (
Sportmart, Inc. v. Daisy Manufacturing Co.
, 268 Ill. App. 3d 974, 978 (1994)), McHugh argues that American "cannot rely on the possibility of McHugh's liability to deny a duty to defend."  Indeed, McHugh argues, this is unlike other cases where the provision requires that the 
liability
 of the named insured be the sole and proximate cause of the injury.  See 
American Country Insurance Co. v. Cline
, 309 Ill. App. 3d 501, 507 (1999) (held that the additional insured was not entitled to a defense where the policy provided coverage
 " ‛solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured' ").  Accordingly, McHugh claims, because there is no requirement that Spectrum be the only negligent actor, so along as the complaint relates to the named insured's work, there is a potential for coverage and the policy is triggered.

McHugh also asserts that the present facts fit the prototypical construction site "additional insured" case.  In that scenario, the employee of a contractor injured in the course of his employment on a construction site sues another entity, usually the premises owner or another contractor, who is an additional insured under his employer's liability policy.  Under such a factual situation, this court has frequently found that the additional insured is covered because it is apparent that the worker's injury arose out of the named insured's operations, and "but for" the plaintiff's presence on the site in the service of the named insured, the accident would not have happened.  See, 
e.g.
, 
J.A. Jones Construction Co. v. Hartford Fire Insurance Co.
, 269 Ill. App. 3d 148 (1995); 
West Bend Mutual Insurance Co. v. Sundance Homes, Inc.
, 238 Ill. App. 3d 335 (1992); 
Shell Oil Co. v. AC&S, Inc.
, 271 Ill. App. 3d 898 (1995); 
Maryland Casualty Co. v. Chicago & North Western Transportation Co.
, 126 Ill. App. 3d 150 (1984).

Defendants assert that in the present case, the same factual pattern exists: "Marciano was hurt while working on or near scaffolding that he used as a mason.  He was on the site and project not at the behest of McHugh; rather, he was working for, and at the immediate direction of, his employer Spectrum Stone. *** But for the fact of his employment with Spectrum, Marciano would not have been at the construction site and would not have been injured."  Thus, where Marciano's injuries were related to Spectrum's presence and work on the site, McHugh concludes that American's duty to defend should have been triggered.  We disagree.

As counsel for McHugh admitted during appellate oral arguments, the Marciano complaint alleges only direct negligence against McHugh.  Accordingly, it does not trigger a duty to defend.  In particular, Marciano alleged that McHugh erected or caused to be erected the scaffolding from which he fell; that McHugh failed to warn him of the danger posed by the scaffolding; that McHugh failed to properly inspect, manage and supervise the jobsite, that McHugh failed to provide adequate safeguards to prevent injury; and that these acts or omissions proximately caused his injury.

Such allegations, we think, take the Marciano complaint outside the protection of American's endorsement to Spectrum and place it squarely within the coverage exclusion that makes American's policy inapplicable to allegations of " ‛Bodily Injury' or ‛property damage' arising out of any act or omission of the additional insured(s) or any of their employees."  In other words, we find that the endorsement requires, as a prerequisite to coverage for an additional insured, that the underlying complaint at least leaves open the possibility that the injuries at issue could have arisen out of the acts or omissions of Spectrum, provided that McHugh is not itself negligent by an act or omission.

We also find that recent holdings of this court suggest that the additional insured endorsement American had with Spectrum does not obligate it to defend McHugh.  See 
Village of Hoffman Estates v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 1011 (1996); 
American Country Insurance Co. v. Kraemer Brothers, Inc.
, 298 Ill. App. 3d 805 (1998); 
American Country Insurance Co. v. Cline
, 309 Ill. App. 3d 501 (1999); 
National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.
, 329 Ill. App. 3d 228 (2002).  In each of those cases, the court interpreted additional insured endorsements similar to that in the present case under nearly identical facts and excluded coverage for additional insureds by way of summary judgment.

In those cases, as here, the tort plaintiff was an employee of the named insured who was injured in the course of his employment and alleged direct negligence on the part of the additional insured without including a claim against the named insured.  In 
Cline
 and 
Kraemer Brothers
, the additional insured endorsement provided " ‛no coverage to the Additional Insured, other than which may be imputed to the Additional Insured *** by virtue of the conduct of the Named Insured.' "  
Cline
, 309 Ill. App. 3d at 504; 
Kraemer Brothers
, 298 Ill. App. 3d at 808.  Similarly, the additional insured clause in 
Hoffman Estates
 only covered additional insureds " ‛with respect to liability incurred solely as a result of some act or omission of the NAMED INSURED.' " (Emphasis omitted.) 
Hoffman Estates
, 283 Ill. App. 3d at 1013.  The additional insured provision in 
National Union
 excluded coverage for the additional insured's " ‛own negligence or the negligence of its servants, agents, or employees.' "  
National Union
, 329 Ill. App. 3d at 232.  In reviewing those additional insured endorsements, this court found in all four instances that an underlying complaint that alleges negligence 
only
 on the part of the additional insured did not trigger a duty to defend or indemnify.  
Cline
, 309 Ill. App. 3d at 515; 
Kraemer Brothers
, 298 Ill. App. 3d at 814; 
Village of Hoffman Estates
, 283 Ill. App. 3d at 1014; 
National Union
, 329 Ill. App. 3d at 234.

Like the underlying complaints in those cases, the underlying complaint in the present case only alleges negligence on the part of the additional insured McHugh.  In addition, the additional insured endorsement here, like the additional insured endorsements at issue in the foregoing cases, does not cover the direct negligence of McHugh, the additional insured.  Therefore, for the reasons stated in 
Cline
, 
Kraemer Brothers
, 
Hoffman Estates
, and 
National Union
, McHugh is not entitled to a defense as a matter of law.

In so holding, we find 
Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.
, 337 Ill. App. 3d 356 (2003), 
appeal denied
, 204 Ill. 2d 660 (2003), cited by McHugh in its reply brief and the most recent case to grapple with this issue, to be factually inapposite.  There, Rodriguez, a workman at a construction site, sued both the general contractor and his subcontractor employer for damages resulting from a work-related injury.  The additional insured policy provision issued by Northwestern contained a specific endorsement for covering the general contractor, but " ‛only with respect to liability imputed to [the general contractor] as a result of negligent acts or omissions of [the subcontractor].' "  
Emcasco
, 337 Ill. App. 3d at 358.  The general contractor tendered its defense to Northwestern, which replied that it was " ‛unable to accept this tender of defense due to many unknown facts.' " 
Emcasco
, 337 Ill. App. 3d at 359.  However, Northwestern also did not sue for a judgment declaring that it had no duty to defend the general contractor.  
Emcasco
, 337 Ill. App. 3d at 359.

The general contractor's general liability insurer, Emcasco, agreed to defend the general contractor, but then sued for a declaratory judgment and for damages attendant to Northwestern's breach of its insurance contract.  
Emcasco
, 337 Ill. App. 3d at 359.  Both Northwestern and Emcasco moved for summary judgment on Emcasco's claim against Northwestern for breach of contract, and the trial court found that Northwestern had no duty to defend the general contractor.  Accordingly, the trial court granted Northwestern summary judgment on Emcasco's complaint.  
Emcasco
, 337 Ill. App. 3d at 359.  In apparent reliance on 
Cline
 and its ilk, the trial court reasoned: 

" ‛[L]ooking at those pleadings [Rodriguez filed against the general contractor], nowhere in them do they present potential coverage under additional insurance endorsement of Northwestern policy. 

***

Ultimately, it may turn out that the [subcontractor] here will be found to have been an agent of the general contractor.

And that the liability of the general contractor may result from negligence of the [subcontractor] being imputed to it within the meaning of this additional insured endorsement.

But realistically pleadings do not fairly present the policy.' "  
Emcasco
, 337 Ill. App. 3d at 359.

In reversing the trial court, this court began by emphasizing the standard used to determine whether an underlying complaint potentially falls within the pale of an insurer's policy:

"Courts look to the allegations of the underlying complaint to determine an insurer's duty to defend its insured.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73 (1991).  The insurer has a duty to defend if the complaint alleges facts potentially within policy coverage.  
Wilkin
, 144 Ill. 2d at 73.  ‛An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'  (Emphasis omitted.) 
Wilkin
, 144 Ill. 2d at 73.  The court must resolve all doubts concerning the scope of coverage in favor of the insured.  
Wilkin
, 144 Ill. 2d at 74."  
Emcasco
, 337 Ill. App. 3d at 359.

In other words, the 
Emcasco
 court reasoned:

"The insurer may refuse to defend only if the insurance contract cannot possibly cover the liability arising from the facts alleged, and the contract cannot possibly cover that liability only when the terms of the policy clearly preclude the possibility of coverage. As the court said in 
Insurance Co. of the State of Pennsylvania v. Protective Insurance Co.
, 227 Ill. App. 3d 360, 367 (1992), ‛an insurer can justifiably refuse to defend only when the allegations of the complaint clearly show on their face that the claim is beyond the coverage of the policy.' [Citations.]  Thus, if the insurance covers the liability on any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint, the insurance company cannot simply refuse to defend, without suing for a judgment declaring that it has no duty to defend."  
Emcasco
, 337 Ill. App. 3d at 360.

In applying the 
Wilkin
 standard to the facts before it, the 
Emcasco
 court ultimately concluded that this court's previous determination in 
Cline
 (and similar cases) resulted from an improper focus on the language of the underlying complaint in determining whether it was potentially within the scope of the policy:

"We cannot agree with 
Cline
 insofar as it suggested that the failure to specifically identify [the subcontractor] as the negligent actor relieved [the insurance company] of the duty to defend.  ‛[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy.  The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.'  
International Insurance Co. v. Rollprint Packaging Products, Inc.
, 312 Ill. App. 3d 998, 1007 (2000).  The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy.  [Citations.]  The insurer may simply refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage."  
Emcasco
, 337 Ill. App. 3d at 361.

The 
Emcasco
 court held that because there existed the possibility of imputed liability between the general contractor and the subcontractor, there was at least one set of facts that potentially brought the underlying complaint under the policy's coverage which, in turn, triggered the insurance company's duty to defend.  
Emcasco
, 337 Ill. App. 3d at 362.  Thus, the 
Emcasco
 court reversed the trial court's decision granting Northwestern summary judgment on Emcasco's complaint, and remanded for determination of the appropriate relief for the breach of contract.  
Emcasco
, 337 Ill. App. 3d at 362.

We think the court in 
Emcasco
 was dealing with a very different factual situation.  There, the underlying complaint named 
both
 the general contractor and the subcontractor –presumably for whom the underlying plaintiff worked– as defendants.  Curiously, the 
Emcasco
 court did not refer to the Workers' Compensation Act's bar against injured workers suing their own employers, or explain why the underlying plaintiff added a party that was apparently his employer as a codefendant.  However, despite the 
Emcasco
 court's assertion that "[w]e cannot agree with 
Cline
 insofar as it suggested that the failure to specifically identify [the subcontractor that purchased the additional insured clause for the general contractor] as the negligent actor relieved American of the duty to defend" (
Emcasco
, 337 Ill. App. 3d at 361), the underlying plaintiff in 
Emcasco
 specifically 
did
 identify his employer in his complaint.  And because both acts of the insured and the additional insured were referenced in the underlying complaint, the court had no choice but to find "[t]he possibility of imputed liability that the complaint left open required Northwestern to defend [the general contractor]." 
Emcasco
, 337 Ill. App. 3d at 362.  Such is not the case here.

In the present case, the underlying complaint alleges:

"8.  Notwithstanding its duty, at said time and place, the Defendants, by and through their agents, servants, and employees, were then and there guilty of one or more of the following careless and negligent acts and/or omissions: ***."

The complaint then goes on to list nine different negligent acts or omissions allegedly committed by the defendants "through their agents, servants, and employees."  As counsel for McHugh admitted during appellate oral arguments, those allegations can only be read to assert the direct liability of McHugh, and say nothing –even remotely– of Spectrum or McHugh's relationship with Spectrum.  Accordingly, the underlying complaint in the present case, combined with the evidence before us, forecloses any possibility that McHugh could have been found liable based upon the conduct of the named insured, Spectrum.  And because those allegations preclude coverage for McHugh, we hold that the trial court correctly found that American had no duty to defend or indemnify.  See 
American Family Mutual Insurance Co. v. Enright
, 334 Ill. App. 3d 1026, 1029 (2002) (held that where the insurer owes no duty to defend, it owes no duty to indemnify).

Alternatively, McHugh claims that because the American policy contains at least three endorsements under which McHugh is entitled to coverage for the Marciano lawsuit, the policy is ambiguous.  As McHugh notes, if the intention of the parties to an insurance policy cannot be reasonably interpreted or if the terms in it are susceptible to more than one construction, the policy is ambiguous.  
Seeburg Corp. of Delaware v. United Founders Life Insurance Co. of Illinois
, 82 Ill. App. 3d 1034, 1039 (1980).  And, McHugh notes, when a policy is determined to be ambiguous, all ambiguities are to be construed most strongly against the drafter and in favor of the insured.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108-09 (1992).

However, in all three purportedly applicable endorsements, coverage is afforded only "to liability specifically resulting from the conduct of the named insured which may be imputed to the additional insured"; "with respect to liability arising out of [the named insured's] ongoing operations performed for that insured"; and "with respect to [the named insured's] actions or omissions in connection with [the named insured's] work for that additional insured by [the named insured] or on [the named insured's] behalf."  In other words, even if we were to assume that American's policy was ambiguous, which we do not, it is clear that each potential endorsement does not cover the direct negligence of McHugh, the additional insured.  And where the Marciano complaint only alleges negligence on the part of the additional insured McHugh, no potential for coverage exists under 
any
 endorsement.

In light of this conclusion, we need not decide American's argument regarding its "tender to others" clause in its policy with Spectrum.  Quite simply, because American never had a duty to defend McHugh against the allegations in the Marciano complaint in the first place, it is unnecessary to determine whether McHugh adequately complied with American's "conditions precedent" before giving a proper tender to American.  Likewise, it is unnecessary to consider McHugh's estoppel arguments.  Regardless of American's actions prior to the inception of the underlying lawsuit, the underlying complaint simply did not allege any tortious conduct that was not already specifically excluded.

In the end, because we find that we, like the trial court, retain jurisdiction of this matter, we deny defendants' motion to dismiss.  Moreover, we hold that because Marciano's complaint foreclosed the possibility of imputed liability between Spectrum and McHugh, American had no duty to defend and, thus, no duty to indemnify.  Accordingly, we affirm the trial court's decision denying McHugh's motion for summary judgment and granting summary judgment to American.  In light of our holding that the plaintiff had no duty to defend, it is unnecessary for us to address American's arguments regarding its "tender to others" provision or McHugh's estoppel argument. 

Affirmed.

QUINN, P.J., and THEIS, J., concur.