**FIRST DIVISION**
**SEPTEMBER 24, 2007**

No. 1-05-0365

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL | ) | Appeal from the |
| INSURANCE COMPANY, as Successor in | ) | Circuit Court of |
| Interest to and Real Party in | ) | Cook County. |
| Interest in Place of Meridian | ) | |
| Mutual Insurance Company, | ) | |
| | ) | |
|        Plaintiff-Appellee, | ) | |
| | ) | |
|   v. | ) | |
| | ) | No. 02 CH 21220 |
| HABITAT CONSTRUCTION COMPANY, | ) | |
| | ) | |
|        Defendant-Appellant | ) | |
| | ) | |
| | ) | |
| (Central Building and Preservation; | ) | |
| Solomon Cordwell, Buenz and | ) | The Honorable, |
| Associates, Inc.; and Larry | ) | Bernetta D. Bush, |
| Medolan, | ) | Judge Presiding. |
| | ) | |
|        Defendants). | ) | |

JUSTICE GARCIA delivered the opinion of the court.

In this declaratory judgment action, the trial court granted summary judgment in favor of the plaintiff, State Automobile Mutual Insurance Company (State Auto), finding it did not have a duty to defend or indemnify the defendant, Habitat Construction Company (Habitat), in an underlying personal injury action. Habitat contends on appeal that it, rather than State Auto, was entitled to summary judgment.

BACKGROUND

In 2000, a construction project for a building located at 2701 South Indiana in Chicago (the project) was underway. Habitat was the general contractor on the project, and Central Building & Preservation (Central Building) was a subcontractor hired to provide certain services. The written contract between Habitat and Central Building required Central Building to add Habitat as an additional insured on the commercial general liability policy it had in effect through State Auto, its insurer.[1] Habitat purportedly has in effect its own liability insurance policy through Pennsylvania General Insurance Company. The record provides no information about the terms of that policy.

The State Auto policy contains a "Blanket Additional Insured Endorsement-Primary and Non-Contributory" provision, which provides, in part:

> **"WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization whom you are required to name as

---

[1] The insurance policy was originally issued through Meridian Mutual Insurance Company (Meridian). On June 1, 2001, State Auto assumed all of the obligations and liabilities of Meridian. The Meridian/State Auto policy is referred to as "the policy" or "the State Auto policy."

an additional insured on this policy under a written contract or agreement.

* * *

The insurance provided the additional insured is limited as follows:

1. That the person or organization is only an additional insured with respect to liability arising out of:

* * *

(b) 'Your work' for that additional insured for or by you.

* * *

3. The insurance provided the additional insured does not apply to 'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury,' or defense coverage under the Supplemental Payments section of the policy arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including:

(a) The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders,

**3**

design or specifications; and

> (b) Supervisory, inspection, or
> engineering services.
> Any coverage provided hereunder shall be
> excess over any other valid and collectible
> insurance available to the additional insured
> whether primary, excess, contingent, or on
> any other basis unless a contract
> specifically requires that this insurance be
> non-contributory and or primary or you
> request that it apply on a non-contributory
> and or primary basis."

The policy defines "Your work" as "Work or operations performed by you or on your behalf; and *** [m]aterials, parts or equipment furnished in connection with such work or operations."

On June 19, 2000, Larry Medolan, a Central Building employee, was allegedly injured while working on the project. On April 2, 2002, Medolan filed a one-count complaint in the circuit court of Cook County, naming Habitat, South Commons Stage One Venture, and Solomon, Cordwell, Buenz and Associates, Inc., as defendants. Central Building was not named in the complaint. Medolan alleged the defendants owned or were in charge of the project site. He also alleged "[t]hat at the aforementioned time and place, [Medolan] was employed by Central Building & Preservation L.P. on said premises in the furtherance of the

**4**

aforesaid work." He further alleged that the defendants were present during the construction and participated in coordinating the work done, designated work methods, and had the authority to stop the work, refuse the work and materials, and order changes in the work "in the event the work was being performed in a dangerous manner or for any other reason." Medolan also alleged the defendants erected a concrete wall to be used in the construction, that his "duties and responsibilities *** required that he work on and about the aforesaid concrete wall," and that a section of concrete fell onto the scaffold on which he was working, injuring him. Medolan alleged, in part, that the named defendants were guilty of certain negligent acts and/or omissions, including: (1) failing to make a reasonable inspection of the premises; (2) improperly operating, managing, maintaining, and controlling the premises; (3) failing to provide him with a safe place to work; (4) failing to warn him of dangerous conditions; (5) failing to provide adequate safeguards to prevent injury to him; (6) failing to supervise the work; and (7) improperly directing workers to cut excessive amounts of concrete, which caused the area to become unstable. According to the complaint, the defendants' negligence proximately caused Medolan's injuries.

Habitat, on May 21, 2003, filed a third-party complaint against Central Building. Habitat denied liability, but alternatively alleged that if it was found liable, Central

No. 1-05-0365

Building engaged in certain negligent acts or omissions, including the same seven acts alleged by Medolan in his complaint. According to the third-party complaint, Central Building's negligence proximately caused Medolan's injuries.

Habitat forwarded the Medolan complaint to Central Building for defense and indemnification. Central Building then forwarded the matter to State Auto. State Auto rejected Habitat's tender of defense and, on November 22, 2002, filed the instant action seeking a declaration that there was no coverage under the policy for Habitat with respect to the Medolan action.

Habitat and State Auto filed cross-motions for summary judgment. After hearing arguments from the parties, the court granted State Auto's summary judgment motion and denied that of Habitat. The court concluded that under American Country Insurance Co. v. James McHugh Construction Co., 344 Ill. App. 3d 960, 801 N.E.2d 1031 (2003), State Auto had no duty to defend or indemnify Habitat under the policy. Because it so concluded, the trial court did not address whether the State Auto policy applied on a primary or excess basis. This timely appeal followed.

ANALYSIS

Habitat contends on appeal that it, and not State Auto, is entitled to summary judgment. Habitat argues that the Medolan action falls within the policy and that State Auto has a duty to defend and indemnify it. State Auto counters that summary judgment was properly granted in its favor because the Medolan

**6**

complaint is devoid of any allegation that Habitat's liability arose out of Central Building's work.  State Auto also argues that the professional services exclusion of the policy bars coverage to Habitat.  State Auto alternatively contends that even if we find that Habitat is covered under the policy, the coverage applies solely on an excess basis.

## I. Standard or Review

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2004); Purtill v. Hess, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986).  Where the parties file cross-motions for summary judgment, they invite the court to decide the issue as a matter of law.  Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339, 842 N.E.2d 170 (2005).  However, "the mere filing of cross-motions does not preclude a determination that triable questions of fact exist."  State Farm Mutual Automobile Insurance Co. v. Coe, 367 Ill. App. 3d 604, 607, 855 N.E.2d 173 (2006).  The grant of summary judgment is reviewed de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

## II.  Duty to Defend

The issue in this case is whether State Auto had a duty to

defend or indemnify Habitat under the policy. "An insurer's duty to defend an insured is much broader than its duty to indemnify." State Automobile Mutual Insurance Co. v. Kingsport Development, LLC, 364 Ill. App. 3d 946, 951, 846 N.E.2d 974 (2006). To determine whether an insurer has a duty to defend an insured, this court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy at issue. Outboard Marine Corp., 154 Ill. 2d at 107-08. The allegations in the complaint must be liberally construed in favor of the insured. Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 223 Ill. 2d 352, 363, 860 N.E.2d 307 (2006). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." Outboard Marine Corp., 154 Ill. 2d at 108.

Many cases from this court have addressed the situation presented here: an employee of a subcontractor is injured in the course of his or her employment on a construction site and sues the general contractor, an additional insured on the subcontractor's general liability policy. See, e.g., Kingsport, 364 Ill. App. 3d 946, 846 N.E.2d. 974; McHugh, 344 Ill. App. 3d 960, 801 N.E.2d 1031; National Union Fire Insurance Co. v. R. Olson Construction Contractors, Inc., 329 Ill. App. 3d 228, 769 N.E.2d 977 (2002); American Country Insurance Co. v. Cline, 309 Ill. App. 3d 501, 722 N.E.2d 755 (1999); Liberty Mutual Insurance Co. v. Westfield Insurance Co., 301 Ill. App. 3d 49, 703 N.E.2d

No. 1-05-0365

439 (1998); American Country Insurance Co. v. Kraemer Brothers, Inc., 298 Ill. App. 3d 805, 699 N.E.2d 1056 (1998). This court has explained:

> "[T]he Illinois Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) bars injured workers from suing their own employers. Consequently, because injured construction workers cannot sue their subcontractor employers, it is common practice for them to sue the general contractor involved with the project. In realization of that possibility, general contractors will usually set up insurance requirements for their subcontractors, with the intent of passing the liability for worker injuries along to the worker's employer's insurance carrier." McHugh, 344 Ill. App. 3d at 963.

### A. Additional Insured

We first address whether the allegations in the Medolan complaint directed against Habitat triggered the "additional insured" coverage based on liability "arising out of" Central Building's work on behalf of Habitat. In his complaint, Medolan alleged that at the time of his injury "he was employed by Central Building [and was] on said premises in furtherance of the

**9**

aforesaid work."[2]  We examine the facts alleged in the complaint to determine whether they potentially fall within the policy's coverage; if so, the insurer has a duty to defend.  Outboard Marine Corp., 154 Ill. 2d at 108.

Habitat relies on cases such as Liberty Mutual Insurance Co., 301 Ill. App. 3d at 54-55, and Maryland Casualty Co. v. Chicago & North Western Transportation Co., 126 Ill. App. 3d 150, 154, 466 N.E.2d 1091 (1984), which have found "arising out of" language like that used in the State Auto policy to be both "broad and vague" and requiring only a "but for" causal connection between the accident and the named insured's work. Habitat argues that "but for" the fact that Medolan was working as Central Building's employee at a project where Habitat contracted with Central Building to perform certain work, Medolan's alleged injury would not have happened.

State Auto counters that the trial court in this case

---

[2] The parties point to other materials in the record, including Medolan's discovery deposition and answers to certain interrogatories, to support their positions.  However, as neither party has convinced us to do otherwise, we adhere to the general rule that courts look only to the underlying complaint to determine whether there is a duty to defend.  Olson, 329 Ill. App. 3d at 235; see also Outboard Marine Corp., 154 Ill. 2d at 107-08.

**10**

properly rejected Habitat's reliance on a "but for" analysis because cases using such a test involved allegations under the now-repealed Structural Work Act (see 740 ILCS 150/0.01 et seq. (West 1994) (repealed by Pub. Act 89-2, §5, eff. February 14, 1995)). State Auto also argues that McHugh, 344 Ill. App. 3d 960, 801 N.E.2d 1031, and Olson, 329 Ill. App. 3d 228, 769 N.E.2d 977, control the outcome of this case.[3]

In McHugh, we recognized the "common practice" for employees of subcontractors injured on the job to sue the general contractor involved with the project in light of the Illinois Workers' Compensation Act (820 ILCS 305/5(a) (West 2004)) bar preventing injured workers from suing their own employers. McHugh, 344 Ill. App. 3d at 963. This "common practice" often results in the general contractor placing insurance requirements on its subcontractors with the intent of passing the liability for worker injuries along to the worker's employer's insurance

---

[3] At oral argument, we addressed the case of State Automobile Mutual Insurance Co. v. Kingsport Development, LLC, 364 Ill. App. 3d 946, 951, 846 N.E.2d 974 (2006), a case that presents virtually identical facts and issues, decided after briefs were submitted in this case. Neither party sought to present Kingsport as additional authority, even though counsel for State Auto was appellate counsel in Kingsport.

carrier. However, as a close examination of the cases finding no duty to defend, such as McHugh and Olson, and those finding a duty to defend, such as Kingsport, reveals, the success of that intent turns on the language of the policy under which the general contractor is named an additional insured. If there is an exclusion provision directly applicable to the facts alleged in the pending complaint against the additional insured so as to trigger that exclusion, no duty to defend arises. See McHugh, 344 Ill. App. 3d 960, 801 N.E.2d 1031; Olson, 329 Ill. App. 3d 228, 769 N.E.2d 977. However, in the absence of such a controlling exclusionary clause, we determine whether a causal connection between the accident and the named insured's work triggers a duty to defend. See Kingsport, 364 Ill. App. 3d 946, 801 N.E.2d 974.

Thus, before a "but for" analysis can be applied to determine whether a duty to defend has been triggered, we first determine whether there exists any policy exclusion that deals squarely with the allegations in the complaint that would make a "but for" analysis unnecessary. Where coverage for the additional insured requires that the liability arise out of named insured's operations, that coverage may further be limited to liability **not** arising from additional insured's own negligence. See Olson, 329 Ill. App. 3d at 238. A complaint that alleges only "direct negligence" of the purported "additional insured" may "place it squarely within the coverage exclusion that makes

**12**

[the policy] inapplicable to allegations *** 'arising out of any act or omission of the additional insured(s).'"  McHugh, 344 Ill. App. 3d at 972.  We look to McHugh and Olson to examine the exclusionary language in those cases that resulted in the respective policy being inapplicable to the underlying complaint.

In Olson, 329 Ill. App. 3d at 1231, the Second District determined that the provision excluding "'LIABILITY RESULTING FROM [THE ADDITIONAL INSURED'S] OWN NEGLIGENCE OR THE NEGLIGENCE OF ITS SERVANTS, AGENTS OR EMPLOYEES'" was sufficient to remove the general contractor from the protection of the subcontractor's insurance policy where the complaint alleged only negligence against the general contractor.  In McHugh, 344 Ill. App. 3d at 964, this court found the provision excluding liability "'arising out of any act or omission of the additional insured(s) or any of their employees'" to likewise place the worker's complaint outside the protection of the insurer's endorsement where only direct negligence of the general contractor was alleged in the complaint.

We note that "negligence" is defined in the pattern jury instructions as "the failure to do something which a reasonably careful person would do [an omission], or the doing of something which a reasonably careful person would not do [an act]." Illinois Pattern Jury Instructions, Civil, No. 10.01 (2000). Thus, the exclusionary provisions in Olson and McHugh are comparable as both excluded liability for a complaint alleging a

**13**

negligence theory of recovery against the additional insured. We look to the State Auto policy before us to determine whether a similar exclusionary provision exists. Of course, this is precisely what the Second District in Kingsport did and found no such exclusionary provision. We then look to determine whether the "but for" analysis should apply. Again, this is precisely what the Second District in Kingsport did. The parties at oral argument adopted the not surprising positions of asking that we follow Kingsport (Habitat) and that we reject Kingsport (State Auto), but neither party has sought leave to present written argument in this regard. Our own examination of Kingsport leads us to adopt and follow its holding.

In Kingsport, Kingsport Development, the general contractor of the construction site, was an additional insured on W.A. Anderson Construction Company's (Anderson) State Auto general liability policy, a policy containing the same language as the policy at issue in this case. Anderson was a subcontractor on the project. Halek, an Anderson employee, was injured on the construction site and filed a complaint naming Kingsport as a defendant and alleging that Kingsport's negligence proximately caused his injuries. Kingsport, 364 Ill. App. 3d at 948. The complaint also alleged Halek was an Anderson employee, he was at the construction site in the course of his employment with Anderson when the injury occurred, Kingsport was present at the site through its subcontractors, and Kingsport participated in

**14**

coordinating the work and had a duty to require its subcontractors to comply with safety standards. Kingsport, 364 Ill. App. 3d at 952. State Auto filed an action in the circuit court seeking a declaration that it had no duty to defend or indemnify Kingsport under the policy. The trial court agreed and granted summary judgment in State Auto's favor. Kingsport, 364 Ill. App. 3d at 950.

On appeal, the Second District reversed, finding that the facts of the underlying complaint established that "Halek's injuries potentially arose out of Anderson's work, and, based on the policy language, State Auto [had] a duty to defend Kingsport in the underlying suit." Kingsport, 364 Ill. App. 3d at 954.

In so holding, the court distinguished McHugh and Olson. The Kingsport court found the language in the State Auto policy distinguishable from that in the policy at issue in McHugh because the policy in McHugh "limited coverage to ' "acts or omissions in connection with" ' the insured's work for the additional insured and excluded coverage for injury ' "arising out of any act or omission of the additional insured(s) or any of their employees." ' " Kingsport, 364 Ill. App. 3d at 958, quoting McHugh, 344 Ill. App. 3d at 964. The State Auto policy, however, "require[d] only that the liability arise out of Anderson's work and [did] not require a more detailed examination of whose acts and omissions are alleged to have caused the injury." Kingsport, 364 Ill. App. 3d at 958. The court in

**15**

Kingsport did recognize "policy language [in the second of three additional endorsements in the McHugh policy] that is similar to the language in this case," prompting it to disagree with McHugh's restrictive reading of that second additional endorsement resulting in coverage only " ' "with respect to liability arising out of [the subcontractor's] ongoing operations performed for that insured," ' " and, thus, excluding coverage for the direct negligence of the general contractor. Kingsport, 364 Ill. App. 3d at 958-59, quoting McHugh, 344 Ill. App. 3d at 976. According to the Kingsport court, "in arriving at this conclusion, the McHugh court *** failed to construe the second endorsement's language liberally in favor of the insured." Kingsport, 364 Ill. App. 3d at 959. We do not find the Kingsport court's disagreement with McHugh on that basis causes us to question the analysis Kingsport employed in reviewing the State Auto policy before it, an analysis we otherwise agree with.

The Kingsport court also distinguished Olson, 329 Ill. App. 3d 228, 769 N.E.2d 977. The relevant language of the policy of the insurer, National, provided that "'COVERAGE SHALL NOT APPLY TO ANY LIABILITY RESULTING FROM THE [ADDITIONAL INSURED'S] OWN NEGLIGENCE OR THE NEGLIGENCE OF ITS SERVANTS, AGENTS OR EMPLOYEES.'" Olson, 329 Ill. App. 3d at 231. It also provided that Olson was included as an additional insured "but only with respect to liability arising out of [the subcontractor's] ongoing operations performed for [Olson]." Olson, 329 Ill. App. 3d at

**16**

231. The court in <u>Kingsport</u> reasoned that, unlike the language of the National policy, which specifically denied coverage for liability resulting from the general contractor's own negligence, or the negligence of its employees, the State Auto policy had no such exclusion. <u>Kingsport</u>, 364 Ill. App. 3d at 958.

The <u>Kingsport</u> court concluded that State Auto had a duty to defend Kingsport. In so holding, the court accepted Kingsport's contention that the "arising out of" language used in the State Auto policy mandated the application of a "but for" analysis, and held that the allegations in the injured employee's complaint established that but for his work for Anderson and Anderson's presence on the construction site, he would not have been injured. <u>Kingsport</u>, 364 Ill. App. 3d at 954. The court rejected State Auto's attempt to distinguish cases applying a "but for" analysis on the basis that those cases involved allegations under the Structural Work Act, finding the cases cited "did not rely on any of the Act's provisions in their analysis, and their reasoning is equally applicable to this case." <u>Kingsport</u>, 364 Ill. App. 3d at 955.

In the case at bar, Medolan's complaint named Habitat and others as defendants and alleged the defendants owned or were in charge of the construction site, that Medolan was employed by Central Building and was on the premises in furtherance of his work, that the defendants were present during the construction and participated in coordinating the work done, and that the

**17**

defendants erected a concrete wall to be used in the construction. Medolan alleged that his duties required that he work on the wall and that, while he was working on the wall, a section of the concrete wall fell onto the scaffold on which he was working and that, as a proximate and direct result of the defendants' acts or omissions, he was injured.

The State Auto policy at issue in this case, like the policy at issue in Kingsport, provides that Habitat is "only an additional insured with respect to liability arising out of *** 'Your [Central Building's] work' for that additional insured [Habitat] for or by you." This court must construe the State Auto policy at issue here "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract," and will give the unambiguous terms of the policy their plain, ordinary and popular meaning. Outboard Marine Corp., 154 Ill. 2d at 108. Unlike the language of the policy at issue in McHugh, which excluded coverage for injuries arising out of the acts or omissions of the general contractor, and the policy at issue in Olson, which prohibited coverage for liability resulting from the general contractor's own negligence, or the negligence of its employees, the State Auto policy at issue in this case only requires that liability "aris[e] out of" Central Building's work for Habitat and contains no similar exclusionary clause.

In other words, the policies at issue in McHugh and Olson

**18**

No. 1-05-0365

essentially limited coverage to liability arising from the work of its named insured, the subcontractor, but expressly excluded coverage for the general contractor's own negligence. Here, State Auto failed to include any such language in its policy. When the allegations of Medolan's complaint, which establish Medolan was injured in furtherance of his work for Central Building, are liberally construed, and are compared to the relevant provisions of the State Auto policy, it is clear that Medolan's alleged injuries at least potentially arose out of Central Building's work. Consequently, the allegations in the Medolan complaint, when compared to the language of the policy, give rise to a duty on the part of State Auto to defend Habitat. Kingsport, 364 Ill. App. 3d at 954.

B. Professional Exclusion Provision

State Auto sets forth the alternative argument that the policy's professional services exclusion bars coverage to Habitat. This contention is properly before this court as we may affirm a trial court's grant of summary judgment on any basis appearing in the record. Material Service Corp. v. Department of Revenue, 98 Ill. 2d 382, 387, 457 N.E.2d 9 (1983).

As noted above, the policy excludes coverage for additional insureds for certain injuries "arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including: (a) The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports,

**19**

surveys, change orders, design or specifications; and (b) Supervisory, inspection, or engineering services."

State Auto points out that the Medolan complaint alleges Habitat was negligent for failing to make reasonable inspection of the premises, improperly operating, managing, maintaining, and controlling the premises, and failing to supervise the work being done on the premises. According to State Auto, because these assertions amount to allegations that Habitat failed to perform proper supervisory and inspection services, Habitat is not covered.

State Auto's contention fails. Habitat is a general contractor. It is the responsibility of a general contractor "to control the project schedule and insure that the structure complies with the project specifications." McHugh, 344 Ill. App. 3d at 963. Habitat is not an architect, engineer, or surveyor, and Medolan's complaint does not allege otherwise. The plain language in insurance polices is to be applied as written, and the parties should be bound to the agreement they made. State Street Bank & Trust Co. v. INA Insurance Co., 207 Ill. App. 3d 961, 966, 567 N.E.2d 42 (1991). Here, the plain language of the professional services exclusion, which by its terms applies to an architect's, engineer's, or surveyor's rendering of or failure to render any professional services, has no application.

### III. Primary or Excess Coverage

We have concluded that as a matter of law, the allegations

**20**

in the Medolan complaint, when compared to the language of the State Auto policy, give rise to State Auto's duty to defend Habitat in the underlying action, and the trial court erred in granting summary judgment in favor of State Auto. State Auto contends that even if we conclude that the trial court improperly granted summary judgment in its favor, Habitat is not entitled to summary judgment in this case because the State Auto policy applies in excess to Habitat's own general liability policy. State Auto also argues its duty to defend Habitat is distinguishable from its duty to indemnify Habitat.

To support its contention that the policy applies only on an excess basis, State Auto points to the policy's "other insurance" provision, which states:

> "Any coverage provided hereunder shall be
> excess over any other valid and collectible
> insurance available to the additional insured
> whether primary, excess, contingent, or on
> any other basis unless a contract
> specifically requires that this insurance be
> non-contributory and or primary or you
> [Central Building] request that it apply on a
> non-contributory and or primary basis."

State Auto argues that because the agreement between Habitat and Central Building did not require Central Building to provide Habitat with coverage as an additional insured on a

noncontributory or primary basis, and because Central Building has never requested that any coverage afforded to Habitat as an additional insured apply on a noncontributory or primary basis, any primary coverage available to Habitat for the Medolan action must be exhausted before the State Auto policy can be triggered.

Habitat responds that the State Auto policy is "primary and non-contributory" because Habitat "target tendered" its defense to State Auto in accordance with John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d 570, 727 N.E.2d 211 (2000). John Burns discusses the "targeted tender rule," which is also referred to as the "selective tender rule." This rule allows an insured covered by multiple concurrent policies the right to select which insurer will defend and indemnify it regarding a specific claim. John Burns, 189 Ill. 2d at 574, see also Institute of London Underwriters v. Hartford Fire Insurance Co., 234 Ill. App. 3d 70, 78-79, 599 N.E.2d 1311 (1992). Illinois courts also recognize the theory of horizontal exhaustion, which provides that an insured must exhaust all available primary insurance before any excess insurance may be invoked. See United States Gypsum Co. v. Admiral Insurance Co., 268 Ill. App. 3d 598, 653-54, 643 N.E.2d 1226 (1994). In Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co., 368 Ill. App. 3d 665, 668-70, 856 N.E.2d 452 (2006), appeal allowed, 222 Ill. 2d 609, 862 N.E.2d 234 (2007), a case decided after the instant appeal arose and the review of which is currently pending in the

**22**

supreme court, the court addressed the relation between the selective tender rule and horizontal exhaustion. The Kajima court held that an insured cannot selectively tender a defense to an excess insurer where primary coverage remains unexhausted. Kajima, 368 Ill. App. 3d at 671-72. Thus, Kajima seems to reject Habitat's contention that it could selectively tender its defense to State Auto where the policy's "other insurance" provision states the policy is to apply in "excess over any other valid and collectible insurance available to" Habitat.

In this case, however, it is unclear whether Habitat has in effect any primary insurance that would cover the Medolan action. Although it can hardly be questioned that Habitat, the general contractor of a major construction project, has in effect its own insurance policy or policies, as we noted above, the record discloses no information about any such policy. We therefore remand the matter to the trial court to determine whether the State Auto policy applies on an excess basis only. See Kingsport, 364 Ill. App. 3d at 962 (remanding to the trial court to determine whether the State Auto policy applied on a primary or excess basis).

Moreover, as State Auto points out, the duty to defend is distinguishable from the duty to indemnify. See Kingsport, 364 Ill. App. 3d at 951. "[T]he question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred

**23**

No. 1-05-0365

liability in the underlying claim against it."  Outboard Marine Corp., 154 Ill. 2d at 127.  Thus, we also remand to the trial court for a determination of this issue.  See Kingsport, 364 Ill. App. 3d at 962 (remanding to the trial court to resolve the issue of indemnification).

CONCLUSION

For the reasons stated above, the trial court's grant of summary judgment in favor of State Auto is reversed, and the matter is remanded to the trial court for further proceedings.

Reversed and remanded.

WOLFSON, and R. GORDON, JJ., concur.