No. 2--05--0568                                   filed: 4/5/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL | ) | Appeal from the Circuit Court |
| INSURANCE COMPANY, as Successor in | ) | of McHenry County. |
| Interest to Meridian Mutual Insurance | ) | |
| Company, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 03--MR--203 |
| | ) | |
| KINGSPORT DEVELOPMENT, LLC, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | Honorable |
| (W.A. Anderson Construction Company and | ) | Michael J. Sullivan, |
| John Halek, Defendants). | ) | Judge, Presiding. |

_____

____

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Kingsport Development, LLC (Kingsport), appeals from the trial court's grant of summary judgment in favor of plaintiff, State Automobile Mutual Insurance Company (State Auto). The trial court ruled that State Auto did not have a duty to defend or indemnify Kingsport in an underlying action. We reverse and remand.

I. BACKGROUND

Kingsport was the developer and general contractor of a residential construction project in Crystal Lake. Kingsport subcontracted carpentry work on the project to W.A.

No. 2--05--0568

Anderson Construction Company (Anderson).  An employee of Anderson, John Halek, allegedly fell while performing carpentry work on the project and suffered personal injuries.[1]

## A. Halek's Complaint

On July 10, 2002, Halek brought a one-count complaint against Kingsport, alleging as follows.  On December 28, 2001, Kingsport owned and controlled the residential development property.  Kingsport was present on the site "through its owners, agents, servants, employees, and/or subcontractors" and "was engaged in construction, engineering, and site supervision activity as the general contractor on the project."  Halek was lawfully on the property as an employee of Anderson.  Kingsport participated in the work and in coordinating, scheduling, and inspecting the work.  It also designated work methods and checked work progress.  Kingsport had the authority to stop the work, refuse the work and materials, and order changes.

Halek further alleged the following.  Kingsport had a duty to provide Halek with a safe workplace and to ensure that subcontractors complied with safety standards and safe work practices.  However, Kingsport failed to provide Halek with appropriate equipment to perform his work safely or, alternatively, failed to stop work being undertaken with unsafe

---

[1]Both Anderson and Halek were named as defendants in State Auto's declaratory judgment action, but they are not parties to this appeal.

equipment. It engaged in one or more of the following negligent acts or omissions: failed "to erect and utilize safe, suitable and proper work support"; failed to reasonably inspect the work and the premises; failed to provide adequate safeguards to prevent Halek from injury when it knew that his work required him "to work off a leading roof edge" and near a wall opening without protection from falling; allowed dangerous work conditions; failed to keep all employees clear of a load suspended by a crane; and failed to ensure that the crane's load was adequately controlled. Halek alleged that as a result of Kingsport's negligence, he was knocked off the edge of a wall and severely injured.

On February 5, 2003, Kingsport filed a third-party action against Anderson in the Halek suit.

## B. State Auto Policy Provisions

Anderson was insured by State Auto under a commercial general liability policy and a commercial umbrella policy. The certificates of insurance named Kingsport as an additional insured under the policies. The commercial general liability policy contains an additional insured endorsement, which provides:

> "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization whom you are required to name as an additional insured on this policy under a written contract or agreement.
>
> The written contract or agreement must be:
>
> 1. Currently in effect or becoming effective during the term of this policy; and 2. Executed prior to the 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury.'

The insurance provided [to] the additional insured is limited as follows:

    1. <u>That the person or organization is only an additional insured with</u> respect     <u>to liability arising out of:</u>

\*\*\*

    (b) <u>'Your work' for that additional insured for or by you."</u>

(Emphasis added.)

The policy defines "your work" as "Work or operations performed by you or on your behalf."

The commercial umbrella policy provides in relevant part:

"(6) Each person or organization who is an insured in the underlying insurance is an insured under this insurance subject to all the limitations of such underlying insurance other than the limits of the underlying insurer's liability."

### C. Kingsport's Tender

Kingsport was served with the Halek complaint on August 1, 2000, and it forwarded the complaint to its insurance broker on the same day. Kingsport's insurer, Zurich North America (Zurich), received notice of the action shortly thereafter. On August 7, 2002, Zurich notified Anderson of the action and stated that it was looking to Anderson to protect Kingsport's interest. However, in a letter to Kingsport dated February 14, 2003, Zurich stated that Kingsport had indicated that it preferred that Zurich handle the action. Zurich stated that it could not tender the matter to Anderson's insurance carrier if Kingsport wanted Zurich to respond first.

On March 4, 2003, Zurich sent a letter to Horton Insurance Agency (Horton), the insurance broker listed on Anderson's certificates of insurance. The letter stated that

Kingsport had confirmed that it wanted State Auto to defend and indemnify it.  On March 13, 2003, Kingsport mailed a letter to State Auto, stating that it was formally tendering the action to the company for exclusive defense and coverage in the Halek action.  State Auto received the letter on March 17, 2003.  The following day, State Auto called Kingsport and asked for various documents.  Kingsport provided the requested information the same day.

On September 22, 2003, Zurich filed a complaint with the Illinois Department of Insurance on behalf of both itself and Kingsport.  The letter alleged that State Auto had failed to acknowledge or respond to Kingsport's tender of the underlying claim.  On October 6, 2003, State Auto denied coverage to Kingsport.  It filed the instant action on October 14, 2003, seeking a declaration that it had no duty to defend or indemnify Kingsport in the Halek suit.

### D. Trial Court Proceedings

In the trial court, State Auto and Kingsport filed cross-motions for summary judgment regarding whether Kingsport was entitled to coverage from State Auto in the Halek action. On February 24, 2005, the trial court granted State Auto's motion and denied Kingsport's motion, ruling that there was no coverage "because the Halek action fails to allege that Kingsport's liability arises out of Anderson's work," in that it "alleges negligence solely on the part of Kingsport and not on the part of Anderson and further fails to assert any allegations sounding in strict or vicarious liability."  The trial court also ruled that State Auto timely filed the declaratory judgment action and that Kingsport's "but for" argument was not "persuasive."  Kingsport moved to reconsider on March 14, 2005, and the trial court denied the motion on May 12, 2005.  Kingsport timely appealed.

## II. ANALYSIS

On appeal, Kingsport argues that the trial court erred by granting summary judgment for State Auto, because (1) the allegations of the Halek complaint create the potential for coverage under the State Auto policies and (2) State Auto is estopped from denying coverage, based on its wrongful denial of coverage and its failure to timely file a declaratory judgment action. Kingsport further argues that based on the selective tender doctrine, State Auto has the sole duty to defend and indemnify it in the underlying action.

State Auto counters that the trial court correctly granted summary judgment in its favor because the underlying action fails to allege that Kingsport's liability arose out of Anderson's work. It also argues that additional defenses, not addressed by the trial court, preclude coverage to Kingsport. Specifically, State Auto argues that: (1) contrary to policy terms, Kingsport and Anderson do not have a written contract requiring Anderson to name Kingsport as an additional insured; (2) Kingsport failed to timely notify State Auto of the Halek action; and (3) the policies' professional services exclusions preclude coverage for Kingsport in the Halek action. State Auto also maintains that, even if we find that Kingsport is covered under the policies, the coverage would apply solely on an excess basis.

### A. Coverage for Kingsport Under State Auto Policies

We begin by addressing the applicable standard of review. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2004). In making this determination, the evidence must be construed strictly against the moving party and liberally in favor of the nonmoving party.

Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 292 (2001). The construction of an insurance policy provision is a question of law that can be properly decided on a motion for summary judgment. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). We review de novo a grant of summary judgment. General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002).

An insurer's duty to defend its insured is much broader than its duty to indemnify. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 125 (1992). In determining whether an insurer must defend its insured, the court must compare the allegations of the underlying complaint to the relevant policy provisions (Outboard Marine Corp., 154 Ill. 2d at 125) and liberally construe both in the insured's favor (Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 560 (2000)). If any of the complaint's allegations fall within or potentially fall within a policy's coverage, the insurer is obligated to defend its insured. Outboard Marine Corp., 154 Ill. 2d at 125. This rule applies even if the allegations are groundless, false, or fraudulent. General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 155 (2005). The duty to indemnify arises only if the insured's activity and the resulting loss or damage actually fall within a policy's coverage. Outboard Marine Corp., 154 Ill. 2d at 128. The insurer may rely on an exclusionary provision to deny coverage only if the provision clearly applies. Atlantic Mutual Insurance Co., 315 Ill. App. 3d at 560. As the duty to defend is broader than the duty to indemnify, we will focus on whether State Auto has a duty to defend Kingsport.

In construing an insurance policy, the court's main objective is to ascertain and give

effect to the contracting parties' intent. Eljer Manufacturing, 197 Ill. 2d at 292. To do so, the court must examine the policy as a whole with regard to the risk undertaken, the subject matter insured, and the contract's purposes. Unambiguous words must be given their plain, ordinary, and popular meaning. Outboard Marine Corp., 154 Ill. 2d at 108. On the other hand, words that are susceptible to more than one reasonable interpretation are ambiguous and will be construed in favor of the insured and against the insurer that drafted the policy. Outboard Marine Corp., 154 Ill. 2d at 108-09. However, courts " 'will not strain to find ambiguity in an insurance policy where none exists.' " Eljer Manufacturing, 197 Ill. 2d at 293, quoting McKinney v. Allstate Insurance Co., 188 Ill. 2d 493, 497 (1999).

Kingsport points out that it is a common construction industry practice for a general contractor to shift the liability risk for construction accidents to its subcontractor by requiring that the subcontractor purchase liability insurance for the contractor. Typically, the subcontractor satisfies this obligation by including the general contractor as an "additional insured" on the subcontractor's own insurance. As the appellate court explained in American Country Insurance Co. v. James McHugh Construction Co., 344 Ill. App. 3d 960 (2003):

"The Illinois Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) bars injured workers from suing their own employers. Consequently, because injured construction workers cannot sue their subcontractor employers, it is common practice for them to sue the general contractor involved with the project. In realization of that possibility, general contractors will usually set up insurance requirements for their subcontractors, with the intent of passing the liability for

worker injuries along to the worker's employer's insurance carrier." McHugh, 344 Ill. App. 3d at 963.

Still, a "limitation on coverage recognizes that businesses in the construction industry carry coverage for liability arising out of their own work and assumes that [the general contractor] would have its own general liability coverage." American Country Insurance Co. v. Cline, 309 Ill. App. 3d 501, 509 (1999).

Kingsport maintains that it is entitled to coverage from State Auto because the additional insured endorsement requires only that Kingsport's liability arise out of Anderson's work. As mentioned, the policy states, "the person or organization is only an additional insured with respect to liability arising out of *** 'Your work' for that additional insured for or by you." The policy defines "your work" as "Work or operations performed by you or on your behalf." Kingsport argues that a plain reading of the factual allegations of the Halek complaint shows that Kingsport's liability for Halek's injuries at least potentially arose out of Anderson's work. Kingsport notes that the complaint expressly alleges that: (1) Halek was an Anderson employee; (2) he was at the construction site in the course of his employment with Anderson when the injury occurred; (3) Kingsport was present at the site through its subcontractors and was engaged in site supervision activities as the general contractor on the project; and (4) Kingsport participated in coordinating the work and had a duty to require subcontractors to comply with safety standards.

Kingsport argues that the trial court should have applied a "but for" analysis in interpreting the language of the additional insured endorsement. Kingsport points out that "but for" Halek's employment with Anderson and presence at the jobsite, Kingsport would

not have been sued. Kingsport cites several cases that have applied such an analysis. See Liberty Mutual Insurance Co. v. Westfield Insurance Co., 301 Ill. App. 3d 49, 54 (1998) (Liberty Mutual); American States Insurance Co. v. Liberty Mutual Insurance Co., 291 Ill. App. 3d 336, 341-42 (1997); Shell Oil Co. v. AC&S, Inc., 271 Ill. App. 3d 898, 906 (1995); Maryland Casualty Co. v. Chicago & North Western Transportation Co., 126 Ill. App. 3d 150, 154 (1984); Electric Insurance Co. v. National Union Fire Insurance Co., 346 F. Supp. 2d 958, 966 (N.D. Ill. 2004). Typically, these cases have relied on the principle that, because the phrase "arising out of" has been held to mean "originating from," "having its origin in," "growing out of," and "flowing from," the phrase "arising out of" "is both broad and vague, and must be liberally construed in favor of the insured; accordingly 'but for' causation, not necessarily proximate causation, satisfies this language." Maryland Casualty Co., 126 Ill. App. 3d at 154.

In Liberty Mutual, as in this case, the underlying suit was brought by a subcontractor's employee who was injured while performing carpentry work on a construction project. Liberty Mutual, 301 Ill. App. 3d at 50-51. The employee sued the general contractor, which was named as an additional insured on the subcontractor's insurance policy. The appellate court addressed the issue of whether, as a matter of law, the additional insured endorsement covered the general contractor. The endorsement stated:

> " 'WHO IS AN INSURED (Section II) is amended to include as an additional insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.' " Liberty Mutual, 301 Ill.

App. 3d at 50-51.

The policy defined " 'your work' " as " 'work or operations performed by you or on your behalf.' " Liberty Mutual, 301 Ill. App. 3d at 51.

Noting that the employee's complaint alleged that his injury resulted from the collapse of a scaffold or support that had been constructed by the general contractor, the subcontractor's insurer argued that the complaint failed to indicate that the general contractor's liability had anything to do with the work performed by the subcontractor. Thus, according to the insurer, the general contractor was not covered as an additional insured under the endorsement. Liberty Mutual, 301 Ill. App. 3d at 53-54. The appellate court rejected this argument, stating that because the policy used the broad phrase "arising out of," the phrase had to be construed in favor of the insured, meaning that "but for" causation applied. Liberty Mutual, 301 Ill. App. 3d at 54. The court held that because the subcontractor's employee was injured while working for the subcontractor on the general contractor's construction project, the general contractor's liability to the employee arose out of the subcontractor's work as a matter of law. Liberty Mutual, 301 Ill. App. 3d at 55; see also American States Insurance Co., 291 Ill. App. 3d at 341 (subcontractor's insurer required to defend general contractor because underlying plaintiff's injuries arose out of subcontractor's work, in that the injuries would not have occurred but for the plaintiff's employment by the subcontractor and the subcontractor's presence on the jobsite); Shell Oil Co., 271 Ill. App. 3d at 906-07 (same).

We note that the policy language at issue in Liberty Mutual is almost identical to the policy language at issue in this case. Both policies limit coverage for the general contractor

to "liability arising out of" "your [the subcontractor's] work" for the general contractor, and they define "your work" as "work or operations performed by you [the subcontractor] or on your [the subcontractor's] behalf." We agree with the Liberty Mutual court and its predecessors, that, because the phrase "arising out of" is broad and vague and must be liberally construed in favor of the insured, "but for" causation applies.

Applying these principles to the instant case, we conclude that the facts of the underlying complaint potentially fall within the State Auto policy language. Halek was employed by and doing carpentry work for Anderson when he was injured. Therefore, but for Halek's work for Anderson and Anderson's presence on the construction site, Halek would not have been injured. Accordingly, Halek's injuries potentially arose out of Anderson's work, and, based on the policy language, State Auto has a duty to defend Kingsport in the underlying suit.

State Auto counters that "but for" causation should not be applied to this case. It notes that the two most recent Illinois cases cited by Kingsport, Liberty Mutual, 301 Ill. App. 3d 49, and American States Insurance Co., 291 Ill. App. 3d 336, involved alleged violations of the now-abolished Structural Work Act (Act) (see 740 ILCS 150/0.01 et seq. (West 1994) (repealed by Pub. Act 89--2, §5, eff. February 14, 1995)). Under the Act, the liability of an actively negligent party may be imputed to a party who had the right to control the construction. Great American Insurance Co. v. West Bend Mutual Insurance Co., 311 Ill. App. 3d 534, 538 (2000). State Auto notes that this court has stated that a violation of the Act is "a cause of action separate and distinct from one based on common-law negligence." National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.,

329 Ill. App. 3d 228, 237 (2002). In <u>Olson</u>, we distinguished cases involving the Act in our analysis of whether the trial court should have examined the general contractor's third-party complaint when determining insurance coverage. <u>Olson</u>, 329 Ill. App. 3d at 238. State Auto argues that such cases may similarly be distinguished here.

State Auto's argument is not persuasive. Although the underlying complaints in <u>Liberty Mutual</u> and <u>American States Co.</u> did allege violations of the Act in addition to common-law negligence claims, the courts did not rely on any of the Act's provisions in their analysis, and their reasoning is equally applicable to this case. Significantly, <u>Shell Oil Co.</u>, 271 Ill. App. 3d 898, which also applied the same analysis to a similar factual pattern, did not involve a violation of the Act.

State Auto additionally argues that the two cases cited by the trial court in its order, <u>Olson</u>, 329 Ill. App. 3d 228, and <u>McHugh</u>, 344 Ill. App. 3d 960, support the trial court's ruling. We examine each case in turn. In <u>Olson</u>, a concrete subcontractor (Olson) subcontracted with a concrete delivery company (Meyer). A Meyer employee was injured while working at the construction site. He brought suit against Olson and others, but not against Meyer. The employee alleged that his injuries had been caused by Olson's negligent acts or omissions. <u>Olson</u>, 329 Ill. App. 3d at 230. Specifically, he alleged that Olson had designated a truck wash-down area that it knew or should have known was unsafe; directed drivers to wash their trucks there; failed to inspect, clean, or adequately illuminate the area; and failed to warn of the area's dangerous condition. The employee alleged that he was injured when he was washing his truck in the designated area, tripped on debris, and fell. <u>Olson</u>, 329 Ill. App. 3d at 232.

No. 2--05--0568

Meyer had a comprehensive general liability policy with an endorsement naming Olson as an additional insured. The endorsement limited the additional insured's coverage to " 'liability arising out of [Meyer's] ongoing operations performed for that insured' " and also contained an exclusion for " 'ANY LIABILITY RESULTING FROM [THE ADDITIONAL INSURED'S] OWN NEGLIGENCE OR THE NEGLIGENCE OF ITS SERVANTS, AGENTS, OR EMPLOYEES.' " Olson, 329 Ill. App. 3d at 231. Olson tendered defense of the employee's action to Meyer's insurer, which declined the tender. Olson also filed a third-party complaint for contribution, alleging that it would be entitled to contribution from Meyer for any liability because Meyer's negligent acts or omissions had proximately caused the employee's injuries. Olson, 329 Ill. App. 3d at 230-31.

The insurer filed a declaratory judgment action for a determination that it was not obligated to defend or indemnify Olson. It argued that Olson could be found liable in the underlying action only if its own negligence had caused the employee's injuries and that the policy specifically excluded coverage for liability resulting from Olson's own negligence. Olson, 329 Ill. App. 3d at 231. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of Olson, reasoning that even if Olson were found liable for its own negligence, a portion of the award could potentially be attributable to acts arising out of Meyer's operations for Olson. Olson, 329 Ill. App. 3d at 232.

On appeal, this court reversed the trial court's judgment. We reasoned that the employee's complaint alleged that Olson's negligent acts or omissions proximately caused the employee's injuries and that the policy exclusion clearly stated that Olson's own negligence was not covered. Olson, 329 Ill. App. 3d at 235. We noted that all of the

employee's allegations against Olson were for Olson's own negligence, rather than for Meyer's negligence, and that the complaint did not allege that Olson was strictly or vicariously liable for Meyer's conduct. Olson, 329 Ill. App. 3d at 232. We stated that the trial court should not have considered Olson's third-party complaint and should have instead looked only to the underlying complaint and the insurance policy to determine whether the insurer had a duty to defend. Olson, 329 Ill. App. 3d at 235. Accordingly, we held that the insurer did not have a duty to defend Olson. Olson, 329 Ill. App. 3d at 239.

We now turn to McHugh. There, a subcontractor's employee sued a general contractor after he was injured on a construction project. McHugh, 344 Ill. App. 3d at 962. The employee's complaint alleged that the general contractor constructed a scaffolding from which the employee fell. The complaint further alleged that the general contractor failed to: inspect, manage, and supervise the construction site; warn the employee of dangerous conditions; or provide adequate safeguards to prevent the employee's injury. The subcontractor was not named as a defendant or joined as a third-party defendant. McHugh, 344 Ill. App. 3d at 964.

The subcontractor's insurance policy named the general contractor as an additional insured. The endorsement stated:

" 'The insurance provided to additional insureds is limited as follows:

(1) The person or organization is an additional insured but only with respect to your acts or omissions in connection with "your work" for that additional insured by you or on your behalf at the location designated in the agreement and designated in a Certificate of Insurance issued by our

authorized producer.

(2)  Additional exclusions.  This insurance does not apply to:

\* \* \*

(c) "Bodily Injury" or "property damage" <u>arising out of any act or</u> <u>omission of the additional insured(s) or any of their employees</u>.' "

(Emphasis added.)  <u>McHugh</u>, 344 Ill. App. 3d at 964.

The general contractor sought coverage from the subcontractor's insurer, and the insurer brought a declaratory judgment action against the general contractor.  <u>McHugh</u>, 344 Ill. App. 3d at 962.  The parties filed cross-motions for summary judgment, and the trial court found in favor of the insurer, ruling that it did not have a duty to defend or indemnify the general contractor.  <u>McHugh</u>, 344 Ill. App. 3d at 965.

On appeal, the general contractor argued, among other things, that the term "arising out of" did not necessarily require that the subcontractor be the only cause of the injury or damage.  <u>McHugh</u>, 344 Ill. App. 3d at 970.  The general contractor maintained that the policy was different from policies in other cases that required that the <u>liability</u> of the named insured be the sole and proximate cause of the injury, and it claimed that as long as the underlying complaint related to the subcontractor's work, there was a potential for coverage that triggered the policy.  <u>McHugh</u>, 344 Ill. App. 3d at 971.

The appellate court disagreed, reasoning that the allegations of the employee's complaint placed it within the policy exclusion for " ' "Bodily Injury" or "property damage" arising out of any act or omission of the additional insured(s) or any of their employees.' " <u>McHugh</u>, 344 Ill. App. 3d at 972.  The court noted that the complaint alleged only direct

negligence against the general contractor. McHugh, 344 Ill. App. 3d at 971. The court stated:

> "[W]e find that the endorsement requires, as a prerequisite to coverage for an additional insured, that the underlying complaint at least leaves open the possibility that the injuries at issue could have arisen out of the acts or omissions of [the subcontractor], provided that [the general contractor] is not itself negligent by an act or omission." McHugh, 344 Ill. App. 3d at 972.

In response to the general contractor's alternative argument that the insurance policy was ambiguous because it contained at least three endorsements entitling it to coverage, the appellate court noted that the endorsements provided coverage only:

> " 'to liability specifically resulting from the conduct of the named insured which may be imputed to the additional insured'; 'with respect to liability arising out of [the named insured's] ongoing operations performed for that insured'; and 'with respect to [the named insured's] actions or omissions in connection with [the named insured's] work for that additional insured by [the named insured] or on [the named insured's] behalf.' " (Emphasis added.) McHugh, 344 Ill. App. 3d at 976.

The court stated that each potential endorsement clearly did not cover the direct negligence of the general contractor and further added, "where the [underlying] complaint alleges negligence on the part of the additional insured [general contractor], no potential for coverage exists under any endorsement." (Emphasis in original.) McHugh, 344 Ill. App. 3d at 976-77; see also Cline, 309 Ill. App. 3d at 513 (no coverage for general contractor where subcontractor's employee did not allege negligence against the subcontractor and

endorsement limited coverage to " 'liability specifically resulting from the conduct of the [subcontractor] which may be imputed to the [general contractor]' "); American Country Insurance Co. v. Kraemer Brothers, Inc., 298 Ill. App. 3d 805, 813-14 (1998) (same).

State Auto argues that the policy language and facts in Olson and McHugh are almost identical to those in this case. State Auto points out that the Halek action alleges negligence solely on the part of Kingsport, without any allegation of strict or vicarious liability, and that the complaint is silent with respect to any allegations against Anderson. Therefore, according to State Auto, there is no coverage for Kingsport as an additional insured under the State Auto policies. We disagree.

We believe that Olson is distinguishable from this case. The Olson endorsement specifically denied coverage for " 'liability resulting from [the general contractor's] own negligence or the negligence of its servants, agents or employees' " (emphasis added), and we relied on this exclusion in holding that the general contractor was not covered under the subcontractor's policy. See Olson, 329 Ill. App. 3d at 232. Such an exclusion is not present in State Auto's policy. Had the only language at issue in Olson been the limitation of the general contractor's coverage to " 'liability arising out of [the subcontractor's] ongoing operations performed for' " the general contractor (Olson, 329 Ill. App. 3d at 231) , we most likely would have reached a different result.

Similarly, McHugh can be distinguished on the basis that it limited coverage to " 'acts or omissions in connection with' " the insured's work for the additional insured and excluded coverage for injury " 'arising out of any act or omission of the additional insured(s) or any of their employees.' " McHugh, 344 Ill. App. 3d at 964. Again, such language is not present in

the State Auto policy, which requires only that the liability arise out of Anderson's work and does not require a more detailed examination of whose acts and omissions are alleged to have caused the injury.

We recognize that the McHugh court also briefly addressed policy language that is similar to the language in this case. The court held that a separate endorsement stating that coverage was afforded only " 'with respect to liability arising out of [the named insured's] ongoing operations performed for that insured' " would not cover the direct negligence of the general contractor. McHugh, 344 Ill. App. 3d at 976. However, we believe that in arriving at this conclusion, the McHugh court failed to consider that the second endorsement's language was less restrictive than the original endorsement, and thereby failed construe the second endorsement's language liberally in favor of the insured. Thus, we disagree with this portion of the court's analysis.

### B. Estoppel

As mentioned, State Auto argues that even if we conclude that the Halek action alleges that Kingsport's liability arises out of Anderson's work, other policy defenses preclude coverage for Kingsport. Kingsport counters that State Auto is estoped from denying coverage, based on its wrongful denial of coverage and its failure to timely file a declaratory judgment action.

When an insurer believes that its policy does not cover a claim, it may not simply refuse to defend the insured. Instead, the insurer must either (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that no coverage exists. Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 150 (1999). An insurer

that does not take either of these steps and is subsequently found to have wrongfully denied coverage is estopped from raising policy defenses to coverage. Employers Insurance of Wausau, 186 Ill. 2d at 150-51.

In this case, State Auto sought a declaratory judgment that it was not required to defend or indemnify Kingsport. However, our inquiry does not end there, as the insurer must file the declaratory judgment action in a timely manner to avoid application of the estoppel doctrine. L.A. Connection v. Penn-America Insurance Co., No. 3--05--0158, slip op. at 4 (January 20, 2006). Our supreme court has not created a definitive framework for determining what constitutes a timely filed action, but two of its decisions provide some guidance. In Employers Insurance of Wausau, the supreme court held that a declaratory judgment action filed by an insurer after the underlying action had been resolved was untimely as a matter of law. Employers Insurance of Wausau, 186 Ill. 2d at 157. A few months later, the supreme court held that an insurer will not be estopped from denying coverage solely because the underlying case was resolved before the declaratory judgment action was completed. State Farm Fire & Casualty Co. v. Martin, 186 Ill. 2d 367, 374 (1999).

As recognized in L.A. Connection, the appellate court has taken various approaches in determining whether an insurer's declaratory judgment action was timely filed. L.A. Connection, slip op. at 4; see also S. Nardoni & J. Vishneski, The Illinois Estoppel Doctrine Revisited: How Promptly Must an Insurer Act?, 24 N. Ill. U. L. Rev. 211, 220-24 (2004). One group of cases has required only that the declaratory judgment action be filed before the underlying lawsuit is resolved. See Pekin Insurance Co. v. Allstate Insurance Co., 329

Ill. App. 3d 46, 50 (1st Dist. 2002); <u>Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.</u>, 309 Ill. App. 3d 694, 700-01 (4th Dist. 2000). A second group of cases has looked to whether a trial or settlement was imminent at the time the insurer sought declaratory relief. See <u>Aetna Casualty & Surety Co. v. O'Rourke Bros., Inc.</u>, 333 Ill. App. 3d 871, 880 (3d Dist. 2002); <u>Westchester Fire Insurance Co. v. G. Heileman Brewing Co.</u>, 321 Ill. App. 3d 622, 634 (1st Dist. 2001). Finally, a third group of cases has focused on whether the insurer filed its action within a reasonable time of being notified of the underlying suit. See <u>L.A. Connection</u>, slip op. at 5 (3d Dist. 2006); <u>West American Insurance Co. v. J.R. Construction Co.</u>, 334 Ill. App. 3d 75, 86 (1st Dist. 2002); <u>Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.</u>, 332 Ill. App. 3d 326, 341-42 (1st Dist. 2002); <u>Korte Construction Co. v. American States Insurance</u>, 322 Ill. App. 3d 451, 458 (5th Dist. 2001).

We agree with the <u>L.A. Connection</u> court that the "reasonable time" test is the best approach to determine whether an insurer timely filed a declaratory judgment action. The estoppel doctrine is meant to enforce the duty to defend. <u>Employers Insurance of Wausau</u>, 186 Ill. 2d at 154. Tests that require <u>only</u> that an insurer file a declaratory judgment action before the underlying suit is resolved or a trial or settlement is imminent contravene this goal, as they potentially give an insurer free license to abandon its insured until the underlying case is almost complete or well underway. In other words, such approaches offer no incentive to the insurer to resolve coverage issues as soon as possible. In contrast, the "reasonable time" test is a more flexible approach that allows the court to decide each case according to its own facts and circumstances (see <u>L.A. Connection</u>, slip

op. at 5) and encourages the prompt filing of declaratory judgment actions.  In adopting the "reasonable time" test, we emphasize that the status of the underlying suit can still be <u>a</u> factor in determining whether the insurer timely filed the declaratory judgment action.  See <u>Employers Insurance of Wausau</u>, 186 Ill. 2d at 157 (holding that a declaratory judgment action brought after the resolution of the underlying action was untimely as a matter of law).

We now examine whether State Auto did, in fact, file this action within a reasonable time of being notified of the Halek suit.  Kingsport argues that although its insurer, Zurich, tendered the action to Anderson on August 7, 2002, State Auto did not file its declaratory judgment action until October 14, 2003, some 14 months later.  However, as State Auto points out, notice by an additional insured to the named insured does not constitute notice to the insurer, as the named insured is not an agent of the insurer.  See <u>American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh</u>, 343 Ill. App. 3d 93, 101 (2003).  That is, notice to Anderson did not constitute notice to State Auto.  State Auto did not receive Kingsport's letter regarding the underlying suit until March 17, 2003, and there is no indication that State Auto was aware of the Halek suit before that time.  See <u>Employers Reinsurance Corp.</u>, 332 Ill. App. 3d at 339 (an insurer has actual notice of a claim where it receives notice from any source that allows it to locate and defend its insured).  Kingsport maintains that even this seven-month delay was unreasonable, especially in light of the fact that State Auto did not act until Zurich filed a complaint with the Illinois Department of Insurance.  Kingsport notes that when State Auto requested documents, Kingsport provided them the same day.  According to Kingsport, the record does not contain any evidence explaining State Auto's delay.

No. 2--05--0568

Kingsport cites <u>Central Mutual Insurance Co. v. Kammerling</u>, 212 Ill. App. 3d 744 (1991), for the proposition that a six-month delay in filing a declaratory judgment action is unreasonable.  However, that case is inapposite to the instant case because in <u>Central Mutual Insurance Co.</u>, the insurer had notice of the claim about 10 months before it filed for a declaratory judgment and about six months after it had already <u>acknowledged</u> that it had a duty to defend the insured.  <u>Central Mutual Insurance Co.</u>, 212 Ill. App. 3d at 749-50. Here, State Auto has consistently taken the position that it does not have a duty to defend Kingsport.

We conclude that State Auto's seven-month delay in seeking a declaratory judgment was not unreasonable, especially in light of the fact that the Halek action was still ongoing at the time Kingsport and State Auto filed their appellate briefs in this case.  See <u>Westchester Fire Insurance Co.</u>, 321 Ill. App. 3d at 634 (declaratory judgment action, which was filed 6 months after insurer received notice of the underlying suit and 15 months before that suit was settled, was timely); see also <u>Employers Reinsurance Corp.</u>, 332 Ill. App. 3d at 340-41 (15-month delay in filing declaratory judgment action not unreasonable where insurer previously denied coverage and filed action only three months after insureds actually sought coverage, and underlying action remained unresolved).

C. State Auto's Policy Defenses

[**Nonpublishable material under Supreme Court Rule 23 removed here.**]

III. CONCLUSION

To review, after concluding that State Auto owed Kingsport a duty to defend under the policy language, we held that State Auto was not estopped from asserting

additional policy defenses.  In examining those defenses, we rejected State Auto's arguments that Kingsport failed to timely notify State Auto of the underlying action and that the policies' professional services exclusions precluded coverage.  However, we determined that questions of material fact remain regarding whether Kingsport satisfied the endorsement's provision that it have a written contract or agreement with Anderson that required Anderson to name Kingsport as an additional insured.  Therefore, we reverse the judgment of the McHenry County circuit court and remand the cause for further proceedings.

If the trial court finds that Kingsport and Anderson had the necessary written contract or agreement, it should resolve whether State Auto's coverage applies on a primary or excess basis.  Then, depending on the status of the underlying suit, the trial court may also resolve whether State Auto has a duty to indemnify Kingsport.  See Outboard Marine Corp., 154 Ill. 2d at 127 ("the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it").

Reversed and remanded.

HUTCHINSON and O'MALLEY, JJ., concur.