# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Vedder v. Continental Western Insurance Co.*, 2012 IL App (5th) 110583

---

| Appellate Court Caption | HEATHER D. VEDDER and STANDARD MUTUAL INSURANCE COMPANY, Plaintiffs-Appellants, v. CONTINENTAL WESTERN INSURANCE COMPANY and WILLIAM V. KROEGER, Defendants-Appellees. |
|---|---|
| District & No. | Fifth District<br>Docket No. 5-11-0583 |
| Filed | October 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the coverage for the injuries suffered by the individual defendant when his motorcycle was struck by plaintiff's vehicle while she was driving as a volunteer for an ambulance service insured by the codefendant, summary judgment was properly entered for defendant insurer and against plaintiff's insurer, since plaintiff's policy provided primary coverage for her vehicle, the ambulance service's policy provided only excess coverage and plaintiff's attempted targeted tender to the service's insurer was ineffective. |
| Decision Under Review | Appeal from the Circuit Court of Montgomery County, No. 11-MR-7; the Hon. Douglas L. Jarman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert Marc Chemers and Richard M. Burgland, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellants.

Daniel G. Litchfield and Kevin A. Titus, both of Litchfield Cavo LLP, of Chicago, for appellees.

Panel

JUSTICE WELCH delivered the judgment of the court, with opinion.

Justices Spomer and Wexstten concurred in the judgment and opinion.

**OPINION**

¶ 1      This is a declaratory judgment action to determine primacy of coverage between two insurers, Standard Mutual Insurance Company (hereinafter Standard Mutual), which insured Heather D. Vedder (the defendant in the underlying suit), and Continental Western Insurance Company (hereinafter Continental), which insured Nokomis/Witt Area Ambulance Service (hereinafter NWAA), for whom Vedder was working as a volunteer.

¶ 2      The conflict arises out of an underlying personal injury lawsuit brought by William Kroeger against Vedder and NWAA to recover for personal injuries he suffered when the motorcycle he was driving was struck by a vehicle being driven by Vedder. At the time of the collision, Vedder was driving her personally owned vehicle but was acting as a volunteer for NWAA. Vedder's vehicle was insured by Standard Mutual; NWAA was insured by Continental. Count I of Kroeger's complaint sought damages against Vedder based on her negligence, and count II sought damages against NWAA under the theory of *respondeat superior*.

¶ 3      The business auto policy issued by Continental to NWAA provides coverage for:

"all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' *** caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

¶ 4      Under the business auto policy, a "covered auto" includes any auto, and an "insured" includes any employee or volunteer worker. For purposes of this appeal there is no dispute that under the Continental business auto policy, Vedder, as a volunteer worker of NWAA, is an "insured" and that Vedder's personally owned vehicle is a "covered auto." The Continental business auto policy further contains the following "other insurance" clause:

"a. For any covered 'auto' you own, and any 'commandeered auto' this Coverage Form provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance ***."

¶ 5      The insurance policy issued by Standard Mutual to Vedder provides coverage for all

sums the insured becomes legally obligated to pay as damages because of bodily injury arising out of the ownership, maintenance, or use of the owned automobile. Persons insured under the policy with respect to the owned automobile include the named insured (Vedder) and "any other person or organization but only with respect to his or its liability because of acts or omissions of [the named insured]." The Standard Mutual policy further contains the following "other insurance" clause:

> "If the insured has other insurance against a loss covered by Part I of this Policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss ***."

¶ 6 The underlying personal injury action was filed July 1, 2010. From the beginning a dispute arose between the two insurers as to which policy provided primary coverage and which insurer was obligated to provide a defense. Continental learned of the filing of the underlying lawsuit on August 1, 2010, when it was notified by its insured, NWAA. On August 9, 2010, Continental assigned defense counsel to represent both NWAA and Vedder, but shortly thereafter counsel discovered a conflict of interest and withdrew from representation of Vedder. On August 23, 2010, Continental learned that Standard Mutual had retained defense counsel for Vedder. From the beginning, Continental took the position that its coverage, if any, was excess, not primary, because Vedder had been driving her personal vehicle at the time of the accident.

¶ 7 On October 15, 2010, Continental formally tendered to Standard Mutual the defense of NWAA. On December 8, 2010, Standard Mutual accepted the tender of the defense of NWAA, agreeing that the two policies were "co-primary" with respect to NWAA, and offered to pay 50% of the costs of NWAA's defense.

¶ 8 On December 8, 2010, Vedder's counsel sent a letter to Continental asserting that Vedder was an "insured" under the Continental policy and tendering defense and indemnification to Continental. Vedder requested that Continental assume her defense and indemnification exclusively and stated that she did not wish Standard Mutual to participate in her defense and/or indemnification. Vedder stated that she would "deactivate" her prior tender to Standard Mutual, which would remain as a backup insurer. Vedder acknowledged that this was a selective and targeted tender of her defense and indemnification.

¶ 9 By letter dated January 13, 2011, Continental restated to Standard Mutual its position that the Continental policy is excess over any other valid and collectible insurance when the vehicle involved in the accident is not owned by NWAA, and since Vedder was driving her personally owned vehicle at the time of the accident the Standard Mutual policy provides primary coverage for both Vedder and NWAA. Accordingly, Continental declined Vedder's targeted tender of defense.

¶ 10 On January 24, 2011, Standard Mutual and Vedder filed in the circuit court of Montgomery County their complaint for declaratory judgment against Continental and Kroeger. Count I of the complaint sought a declaration that by virtue of Vedder's selective and targeted tender to Continental, Continental is the sole and exclusive insurer with respect to Kroeger's claims against Vedder, and further that by virtue of its failure and refusal to

provide Vedder with a defense, Continental is estopped from raising any defense to coverage. Count II sought money damages pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2010)), because of Continental's bad faith. Count III sought reimbursement to Standard Mutual for costs incurred in defending Vedder where, by virtue of the targeted tender, Continental was the sole and primary insurer. Count IV sought a declaration that with respect to the defense of NWAA the policies of Continental and Standard Mutual were "co-primary" and each insurer was liable to pay one-half the costs associated with the defense of NWAA.

¶ 11    On March 25, 2011, Continental filed its answer and affirmative defenses to Standard Mutual's complaint and a counterclaim for declaratory judgment. In count I of its counterclaim, Continental alleges that the Standard Mutual policy provides the sole primary coverage for NWAA and is responsible for 100% of the costs of defense. In count II of its counterclaim, Continental alleges that Vedder's attempted "selective and targeted tender" was invalid and ineffective because Vedder neither paid a premium nor negotiated to be a named insured under the Continental policy and because, in any event, application of the targeted tender doctrine in the auto insurance context violates the public policy of the state. The counterclaim seeks declarations that Continental does not owe Vedder any defense, that Standard Mutual is required to provide and fund the entire defense of Vedder, that Standard Mutual is required to provide and fund the entire defense of NWAA, that the Standard Mutual policy provides primary coverage to both Vedder and NWAA, that the Continental policy provides excess coverage to Vedder, and that Standard Mutual must reimburse Continental for sums it expended in defense of NWAA.

¶ 12    Both parties filed motions for summary judgment. Standard Mutual sought summary judgment on all four counts of its complaint. Continental sought summary judgment on count IV of Standard Mutual's complaint and on count I of its own counterclaim.

¶ 13    On December 8, 2011, the circuit court granted the motion of Continental for summary judgment and denied that of Standard Mutual. The court held that Standard Mutual's policy provided primary coverage to both Vedder and NWAA and that the coverage of the Continental policy was excess. The court stated:

"The language of the Continental Western insurance policy clearly provides excess coverage and not primary coverage for autos not owned by the insured ambulance service. Under the Standard Mutual policy, the ambulance service is an 'insured' and Standard Mutual owes a duty to defend the ambulance service."

¶ 14    We note that the circuit court did not rule on count II of Standard Mutual's complaint, which sought damages under section 155 of the Illinois Insurance Code. However, the court found that there was no just reason to delay enforcement or appeal of the judgment. Accordingly, we have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶ 15    On appeal, Standard Mutual argues that Vedder's selective and targeted tender to Continental triggered Continental's sole responsibility to defend Vedder in the underlying lawsuit and that Vedder's right to targeted tender prevails over principles of horizontal exhaustion. Alternatively, Standard Mutual argues that, to the extent this court finds the

targeted tender principle inapplicable, Continental is still solely responsible for Vedder's defense because, due to its delay in seeking declaratory judgment as to its duty to defend, it is estopped from asserting policy defenses. Standard Mutual also argues that Continental cannot rely on the "other insurance" provision to escape its duty to defend Vedder. Finally, Standard Mutual argues that it is entitled to judgment in the amount of 50% of NWAA's defense costs because the two insurers are co-primary with respect to NWAA.

¶ 16   Because this case is an appeal from a ruling on a summary judgment, and presents purely a question of law, the construction of an insurance policy, our review is *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993).

¶ 17   We discuss first the circuit court's denial of Standard Mutual's motion for summary judgment on counts I and III of its complaint, and its grant of Continental's motion for summary judgment on count II of its counterclaim, addressing the insurers' respective duties to defend Vedder. With respect to this issue, we affirm because by the terms of the two policies, and pursuant to public policy and case law, Standard Mutual, as the insurer of the vehicle owner, provided primary coverage, while Continental provided only excess coverage; an insured can only selectively target tender between two primary coverages, so Vedder could not target tender her defense and indemnification to Continental; and Continental is not estopped to raise policy defenses because of an unreasonable failure to provide Vedder with a defense.

¶ 18   By the plain language of the insurance policies, Standard Mutual provides primary coverage and Continental provides only excess coverage to Vedder. Under the Standard Mutual policy, Vedder is the named insured and the policy insures the vehicle that Vedder was driving. Under the Continental policy, Vedder is an insured only by definition, the vehicle being driven was not owned by the named insured (NWAA), and the policy's "other insurance" clause explicitly provides that "[f]or any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." Case law interpreting "other insurance" clauses virtually identical to that in the Continental policy has held that the insurer of the vehicle involved in the accident provides primary coverage. In *Country Mutual Insurance Co. v. Teachers Insurance Co.*, 324 Ill. App. 3d 246, 248 (2001), we construed an "other insurance" clause identical to that in the Continental policy to provide only excess coverage to the primary coverage provided to the owner of the vehicle involved in the accident.

¶ 19   Furthermore, pursuant to public policy and industry custom and practice, the insurance covering the vehicle involved in the accident is the primary insurance. In *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 246 (1998), our supreme court held that pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the owner of an automobile. The court further held that to construe a policy covering the vehicle involved in the accident as other than the primary insurance for that vehicle would violate the public policy of this state as defined by the legislature in section 7-317 of the Illinois Vehicle Code (625 ILCS 5/7-317 (West 2008)). See also *Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 305 Ill. App. 3d 417, 421 (1999). Accordingly, Continental had no obligation to defend Vedder in the

underlying lawsuit.

¶ 20    Nevertheless, Standard Mutual argues that its targeted tender to Continental served to render Continental solely responsible for Vedder's defense and indemnification and absolved Standard Mutual of any such responsibility. We find that Vedder's targeted tender was invalid and ineffective because the principle of horizontal exhaustion does not allow an insured to target tender to an excess insurer.

¶ 21    The principle of horizontal exhaustion requires an insured who has multiple primary and excess policies covering a common risk to exhaust all primary policy limits before invoking excess coverage. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 105 (2007). Our courts have consistently held that an insured cannot target tender a defense to his excess insurer while primary coverage remains unexhausted. *Kajima*, 227 Ill. 2d at 115; *State Automobile Mutual Insurance Co. v. Habitat Construction Co.*, 377 Ill. App. 3d 281, 293 (2007); *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492 (2009). Accordingly, Vedder's targeted tender of her defense to Continental was ineffective and invalid and could not serve to make Continental solely responsible for Vedder's defense.

¶ 22    There is another reason Vedder cannot target tender her defense to Continental: Vedder did not pay a premium for or bargain for coverage under the Continental policy. In *Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 357 Ill. App. 3d 891, 902-03 (2005), it was held that an insured does not have a paramount right to deselect its own insurer in favor of another where the insured is not named as an insured or additional insured on the selected policy and did not pay a premium for or bargain for coverage under the selected policy. In *State Auto Property & Casualty Insurance Co. v. Springfield Fire & Casualty Co.*, 394 Ill. App. 3d 414, 419 (2009), the court explained that whether an individual is a named insured is significant because the rationale for allowing an insured to deselect coverage is that it vests the named insured with the right to choose between two policies for which the named insured has either paid the premium or negotiated for the right to be on the policy. "In contrast, when a party has only contracted with, and paid the premium for, one policy and attempts to deselect its policy in favor of a policy on which it has not paid the premium or negotiated to be the named insured, this rationale is inapplicable." 394 Ill. App. 3d at 419. Accordingly, because Vedder neither paid a premium for nor bargained for coverage under the Continental policy, she cannot target tender her defense to Continental.

¶ 23    Relying on *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 397 Ill. App. 3d 512, 530-34 (2010) (*CHRPP*), Standard Mutual argues that, where a claim is made under a theory of *respondeat superior*, the employee has an absolute right to target tender her defense to her employer's insurer. Standard Mutual's reliance on *CHRPP* is misplaced. That case involved a targeted tender to a co-primary insurer, not to an excess insurer.

¶ 24    The Standard Mutual policy provided primary coverage to Vedder; the Continental policy provided only excess coverage. Vedder's attempted targeted tender to Continental was ineffective and invalid and could not serve to render Continental solely responsible for Vedder's defense of the underlying suit.

-6-

¶ 25    Standard Mutual next argues that, even if the targeted tender is held invalid, Continental is still solely responsible for Vedder's defense because, due to its delay in seeking declaratory judgment, it is estopped from asserting policy defenses such as the "other insurance" clause. Standard Mutual argues that Continental's delay between learning of the underlying suit on August 1, 2010, and the filing of its counterclaim to Vedder's complaint for declaratory judgment on March 25, 2011, was unreasonable as a matter of law and Continental should be estopped from asserting any defense to coverage. We do not agree.

¶ 26    We find nothing unreasonable in Continental's actions. Continental learned of the underlying suit on August 1, 2010. On August 9, 2010, Continental provided Vedder with defense counsel. Shortly thereafter, counsel withdrew due to a conflict of interest, but on August 23, 2010, Continental learned that Standard Mutual, the primary insurer, had provided Vedder with counsel. Other than the invalid targeted tender, no request was made of Continental to provide a defense for Vedder. Indeed, at Continental's request, Standard Mutual agreed to provide a defense for NWAA as well. Upon the filing of Standard Mutual's complaint for declaratory judgment, Continental filed its counterclaim. There is no indication that at that point the underlying action had been, or was close to being, resolved. Continental took appropriate action within a reasonable time of learning of the underlying lawsuit and did not breach its duty to defend Vedder. See *State Automobile Mutual Insurance Co. v. Kingsport Development, LLC*, 364 Ill. App. 3d 946, 960-61 (2006). Accordingly, Continental is not estopped from raising policy defenses to coverage.

¶ 27    Finally, Standard Mutual argues that even if the targeted tender was ineffective and Continental is not estopped to assert policy defenses, Continental cannot rely on the "other insurance" clause to escape its duty to defend Vedder. Standard Mutual relies primarily on *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175, 199-200 (1986). Standard Mutual argues that where two or more policies have been triggered and where, as here, the language of the policies provides that the insurers are obligated to pay "all sums" and defend "any suit," each carrier is independently responsible to the mutual insured for the full cost of the defense, and an "other insurance" clause does not affect an insurer's duty to provide a full defense and indemnification to its insured. Standard Mutual's reliance on *Raymark* is misplaced.

¶ 28    *Raymark* involved the allocation of indemnity and defense costs in thousands of lawsuits involving asbestos-related claims filed against the insured, Raymark Industries. Zurich Insurance argued that the circuit court had erred in refusing to order *pro rata* allocations of obligations among the triggered *primary* policies. Instead, the circuit court made each insurer whose policy was triggered liable for the whole of the injury. Accordingly, each insurer was obligated to provide Raymark's indemnity and defense.

¶ 29    The appellate court affirmed, relying on the language of the policies, which stated that the insurer was obligated to pay " 'll sums' " which Raymark may become legally obligated to pay and to defend " 'any suit' " against Raymark. 145 Ill. App. 3d at 199. The court concluded that the insurers' own policy language provided that, as between Raymark and its insurers, each insurer was independently responsible to Raymark for the full costs of defense and indemnity. 145 Ill. App. 3d at 199. The court further held that the fact that a policy may contain an "other insurance" clause does not affect the individual insurance company's

-7-

obligations to the insured. 145 Ill. App. 3d at 199. Of course, in that case, the "other insurance" clause was not an excess clause like the "other insurance" clause in the Continental policy, but, because all the policies were primary, simply addressed the allocation of loss as does the "other insurance" clause in the Standard Mutual policy.

¶ 30     *Raymark* is simply inapposite to the case at bar. *Raymark* involved only primary carriers that were each independently obligated to provide a full defense and indemnity, up to the limits of the policy, to Raymark. The case at bar does not involve two *primary* insurance policies, but one primary policy and one excess policy. The excess insurer has no obligation to defend or indemnify Vedder until the limits of the primary policy are exhausted.

¶ 31     Accordingly, we affirm the circuit court's denial of Standard Mutual's motion for summary judgment on counts I and III of its complaint and the grant of Continental's motion for summary judgment on count II of its counterclaim.

¶ 32     We turn now to the circuit court's denial of Standard Mutual's motion for summary judgment on count IV of its complaint, and the grant of Continental's motion for summary judgment on count IV of Standard Mutual's complaint and on count I of its counterclaim, concerning the insurers' respective duties to defend NWAA. Standard Mutual argues that the two policies were both primary with respect to NWAA, and therefore the two insurers should share defense costs equally.

¶ 33     As we have already held, the Standard Mutual policy is primary and the Continental policy is excess. Accordingly, Standard Mutual is obligated to pay for the entire defense of NWAA. We affirm the circuit court's denial of Standard Mutual's motion for summary judgment on count IV of its complaint and the grant of Continental's motion for summary judgment on count IV of Standard Mutual's complaint and on count I of its counterclaim.

¶ 34     "Summary judgment is appropriate where the pleadings, depositions, admissions and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kajima*, 227 Ill. 2d at 106. Because there are no disputed issues of material fact, and Continental was entitled to judgment as a matter of law, we affirm the circuit court's denial of Standard Mutual's motion for summary judgment and its grant of Continental's motion for summary judgment.

¶ 35     For the foregoing reasons, the judgment of the circuit court of Montgomery County is hereby affirmed.

¶ 36     Affirmed.