978 So.2d 1058 (2008)
WASTE MANAGEMENT OF LOUISIANA, L.L.C., Plaintiff-Appellee
v.
LABOR FINDERS INTERNATIONAL, Ft. Pierce, Inc. and ABC Insurance Company, Defendants-Appellants.
No. 43,052-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2008.
Davenport, Files, & Kelly, by Michael J. Fontenot, Monroe, for Appellants.
*1059 Taylor, Wellons, Politz, & Duhe, by Paula M. Wellons, New Orleans, for Appellee.
Before BROWN, WILLIAMS, and DREW, JJ.
BROWN, Chief Judge.
Defendant/appellant, Labor Finders International, Ft. Pierce, Inc., d/b/a Labor Finders (Monroe) ("Labor Finders"), appeals from the grant of summary judgment in favor of plaintiff/appellee, Waste Management of Louisiana, L.L.C. ("Waste Management"). For the following reasons we reverse and remand.

Facts and Procedural Background
In April 1999, Waste Management and Labor Finders entered into a Temporary Personnel Supply Agreement. This contract required Labor Finders to maintain insurance on behalf of Waste Management and its affiliates, as well as to provide for the defense and indemnification of costs for actions arising from the work to be performed by Labor Finders and/or costs arising from or caused by Labor Finders' breach of the agreement. Based upon the language of the contract, Waste Management filed suit against Labor Finders for reimbursement of its litigation costs associated with the defense of tort and workers' compensation actions brought by Cedric McGinnis, an employee of Labor Finders.
The underlying facts are set forth in McGinnis v. Waste Management of Louisiana, L.L.C., 40,330 (La.App.2d Cir. 10/26/07), 914 So.2d 612, 613:
Cedric McGinnis appeals a judgment dismissing his personal injury action against Waste Management of Louisiana, L.L.C., its general liability insurer and one of its employees, Edward Bryant. The district court found that McGinnis's exclusive remedy is in workers' compensation. We affirm.
Factual Background
Waste Management is a provider of solid waste collection services. In April 1999, it signed a "temporary personnel supply agreement" with Labor Finders of Monroe, a temporary employment agency, for Labor Finders to provide personnel to Waste Management. The agreement provided that no personnel supplied by Labor Finders shall be employees of Waste Management. The agreement further provided that Labor Finders was an independent contractor vis-à-vis Waste Management and responsible for maintaining workers' compensation insurance for its own personnel. Labor Finders paid its workers' salaries according to a weekly time sheet provided by Waste Management. The agreement did not specify the type of work that temporary workers would be performing for Waste Management.
Waste Management employed Edward Bryant, who is McGinnis's uncle, as a garbage truck driver in Ouachita Parish; Bryant was not employed by Labor Finders. In April 2003, Bryant was shorthanded on his route so he asked McGinnis to join the crew, instructing him to apply for a job at Labor Finders. McGinnis did so and was accepted; Labor Finders sent him to work for Bryant at Waste Management as a Labor Finders employee.
On the morning of June 20, 2003, Bryant and McGinnis were collecting garbage on Rowland Road in Ouachita Parish when Bryant, who was driving, backed up the truck into the front end of a Ford Mustang that was waiting behind the truck. McGinnis (who was riding on the back of the truck) was unable to escape his position before the crash; his right leg was pinned between the car and the truck. McGinnis's knee actually smashed out one of the Mustang's headlights. *1060 He was taken to North Monroe Hospital and treated for serious injuries.
Waste Management defended the personal injury lawsuit and initially defended the workers' compensation claim. Sometime after the conclusion of the tort action, Labor Finders assumed the defense of McGinnis's workers' compensation action.
During the discovery phase of this breach of contract action, Labor Finders admitted that it had no insurance policies in force and effect on June 20, 2003, in which Waste Management or its affiliates were named insureds. Based upon this admission, Waste Management filed its motion for summary judgment.
The trial court granted Waste Management's motion, finding that Waste Management had not waived its right to recover from Labor Finders, that Labor Finders had breached its duty to provide insurance in favor of Waste Management and its affiliates, and that Waste Management incurred damages as a result of Labor Finders' breach. From this judgment Labor Finders has appealed.

Discussion
Appellate courts review summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kelly v. City of Bossier City, 41,705 (La.App. 2d Cir.12/13/06), 945 So.2d 229. A motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The mover has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt on this score should be resolved against granting the motion. Security Nat. Trust v. Kalmback, 613 So.2d 664 (La.App. 2d Cir.1993). If the moving party's supporting documents are insufficient to resolve all material factual issues, then summary judgment must be denied. Id.
Waste Management argued that Labor Finders breached the agreement and, as a result, it was entitled to indemnification for the costs and expenses sustained in defense of the actions brought by McGinnis. To support its argument Waste Management relied upon the following contractual provisions ("Company" refers to Waste Management and "Agency" refers to Labor Finders of Monroe):
ARTICLE VII  Agency's Indemnity
The Agency agrees to defend, hold harmless and unconditionally indemnify the Company, and all of its Affiliates (defined below), and all of their respective officers, directors and employees, against and for all liabilities, costs, expenses (including attorney's fees and expenses of investigation), claims and damages which the Company may at any time suffer or sustain or become liable for by reason of accidents, damages or injuries (including injuries resulting in death) either to the persons or property, or both, of the Agency or Company, or employees of either party, or to other parties, in any manner caused by or resulting from the Agency's breach of this Agreement or acts or failure to act by the Agency or its employees or agents in the performance of this Agreement, or in any manner arising from the work to be performed by the Agency, (including injuries or damages in whole or in part by the negligence of the company).[1]
ARTICLE VIII  Insurance

*1061 The Agency agrees that at all times during this Agreement to maintain in full force and effect Employers' Liability, Workers' Compensation, Public Liability, Professional Malpractice, where applicable, and Property Damage, including contractual liability coverage for the above hold harmless provisions, and other insurance as specified by the Company . . . all of such policies shall be endorsed to name the Company, and all of its Affiliates, as additional insured and such insurance shall be by insurers and for policy limits acceptable to the Company and before commencement of performance hereunder. . . .
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.
Clearly, Waste Management set up the insurance requirement of its subcontractor, Labor Finders, to pass on to the subcontractor's insurer any liability for the negligence of the subcontractor's employee(s).
A review of the contract, specifically Article VIII, supra, establishes that Labor Finders was to maintain liability insurance naming Waste Management as an additional insured. In fact, Labor Finders admits that if it did not do so, this failure would have been a breach of the agreement. Waste Management supported its summary judgment motion with the admission by Labor Finders that it had no liability insurance on the day of McGinnis's accident that named Waste Management as an insured.
The trial court was correct in concluding that Labor Finders clearly breached the contract by failing to provide insurance. However, that does not end the inquiry. Even if Labor Finders had provided the insurance required by the agreement, would that insurance have covered McGinnis's personal injury claim? The real issue in this case is the duty to defend. McGinnis's tort claim alleged injury caused by the direct negligence of Waste Management's employee, Edward Bryant. In particular, McGinnis asserted that Bryant backed the garbage truck into a vehicle which had stopped behind it, and as a result, McGinnis, who was on the back of the truck, was crushed between the two vehicles.
Article VII imposes a duty "to defend, hold harmless and unconditionally indemnify (Waste Management)" for all liabilities, costs, expenses, claims and damages "in any manner caused by or resulting from (Labor Finders') breach of this agreement or acts or failure to act by (Labor Finders) employees or agents in the performance of this agreement or in any manner arising from the work to be performed by (Labor Finders)." Further, a phrase that would include coverage for injuries or damages caused by the negligence of Waste Management or its employees was marked out and therefore not part of the contract. Why this clause was marked through remains an issue of fact. It appears, however, to show an intent not to provide coverage for negligent acts of Waste Management employees. Since coverage for an additional insured (Waste Management) is typically limited to liability arising out of the named insured's (Labor Finders') work or operations,[2] Waste Management would have had to prove that Labor Finders had a duty to defend McGinnis's allegations of negligence on the *1062 part of Waste Management and its employee.[3]
A court must examine the well-pleaded allegations of the plaintiffs petition to determine whether the plaintiffs allegations create a duty to defend. Suire v. Lafayette City-Parish Consol. Government, 04-1459 (La.04/12/05), 907 So.2d 37. Plaintiff's petition states that the sole cause of the injury was the negligence of Waste Management's employee, Edward Bryant.
Obviously, Labor Finders had an obligation to provide insurance and to defend and/or indemnify Waste Management for any claims arising from the negligent acts of Labor Finders' employees. Equally obvious, Labor Finders would owe no such duty to supply Waste Management insurance or indemnification for the damage caused to the Ford Mustang that was negligently backed into by Waste Management's employee. Likewise, Labor Finders had no obligation to provide coverage or indemnity for the negligence of Waste Management's employee in pinning McGinnis between the truck and vehicle.
We further find that because McGinnis was Labor Finders' employee, his workers' compensation claim would fall under the contractual requirement for Labor Finders to defend and indemnify.

Conclusion
For the reasons stated herein, we reverse the trial court's grant of summary judgment in favor of Waste Management of Louisiana, L.L.C., and remand for further proceedings in accordance with this opinion.
Costs are assessed to plaintiff/appellee, Waste Management of Louisiana, L.L.C.
Reversed and Remanded.
NOTES
[1] This last phrase in parentheses was scratched through in the parties' contract.
[2] See 3 Couch on Insurance 3d § 40:25.
[3] See American County Ins. Co. v. James McHugh Const. Co., 344 Ill.App.3d 960, 280 Ill.Dec. 86, 801 N.E.2d 1031 (2003) (holding that where a complaint alleges negligence only on the part of the additional insured, the insurer did not have a duty to defend or indemnify the additional insured).